## SQUIRE v. DENMAN.

## SAME v. GUITTEAU.
### Nos. 4053, 4054.

District Court, N. D. Ohio, W. D.
Dec. 29, 1936.

John J. Kendrick (of Fraser, Effler, Shumaker & Winn), of Toledo, Ohio, for plaintiff.

Frederic G. Rita, Sp. Asst. to Atty. Gen. and Gerald P. Openlander, Asst. U. S. Atty., of Toledo, Ohio, for defendant.

HAHN, District Judge.

Plaintiff has sued the government for refunds for the years 1929 and 1930 to recover tax alleged to have been wrongfully and illegally collected from the Commerce Guardian Trust & Savings Bank Company. There being two collectors, two suits were necessary. However, the two cases were consolidated for trial and the issues are identical.

■ Plaintiff claims that the Commerce Guardian Trust & Savings Bank Company was a dealer in securities within the meaning of regulations as interpreted in Harriman National Bank v. Commissioner, 43 F.(2d) 950 (C.C.A.2), and other authorities, and that, therefore, the bank in the years in question was entitled to use inventories in making its returns. Treasury Regulation 74, Article 105, approved February 15, 1929, promulgated under the Revenue Act of 1928 (45 Stat. 791).

I think that plaintiff has established beyond any doubt that during the years in question the Commerce Guardian Trust & Savings Bank Company of Toledo was a dealer in securities. It is unnecessary to review the evidence at any great length. The bank maintained a separate department for sale of stocks and securities to the public to the same extent that it maintained a separate trust department. The former department was in charge of Harry P. Caves, the vice president. There was a cage in the lobby devoted to this department, the lobby space being on the ground floor and having a sign bearing the legend "Bond Department." There was a separate ledger kept for bonds of the bank which were held for resale and a separate ledger kept for the bonds of the bank held for investment. The bank and its salesmen were licensed to conduct this business in the state of Ohio and the state of Michigan, and its salesmen attempted to and did make many sales in both states. The evidence shows the amount of sales in each of the years involved, but the amounts of the sales are unimportant. For a part of the time, there was also a telegraph operator connected with a concern in Detroit which likewise sold bonds. An analysis of the accounts shows 753 transactions during the

year 1929 and 610 transactions during the year 1930. There were considerable sales to brokers, but by far the larger amount of sales were to outsiders and the public generally. If as to this separate department the bank was not a dealer in securities, it would .be difficult to present a set of circumstances in which a bank would be regarded as a dealer in securities within the meaning of the regulations.

That it was such a dealer in securities follows from the Harriman Case, supra, and other authorities. See Schafer v. Helvering, 57 S.Ct. 148, 81 L.Ed. —; Helvering v. Fried, 57 S.Ct. 150, 81 L.Ed. —; Fried v. Commissioner of Internal Revenue (C.C.A.2) 83 F.(2d) 193; Schafer v. Helvering. 65 App.D.C. 292, 83 F.(2d) 317; Commissioner of Internal Revenue v. Stevens (C.C.A.2) 78 F.(2d) 713; Commissioner of Internal Revenue v. Charavay (C.C.A.3) 79 F.(2d) 406; Vaughan v. Commissioner of Internal Revenue (C.C.A.2) 85 F.(2d) 497. There is no authority which has come to my attention which would even hint that on the facts in this case the plaintiff was not a dealer in securities.

■ It is urged that the plaintiff in making up its income tax is not entitled to use inventories, it being claimed that the plaintiff kept its books upon a cash basis and that the use of inventories in determining income is not consistent with the practice of keeping books upon a cash basis. I need not determine the question. It is true that in answer to a question in its returns the taxpayer stated, in effect, that its books were kept on a cash basis, but an examination of the entire returns and the evidence pertaining to plaintiff's method of bookkeeping leads to the conclusion, and I find, that the plaintiff kept its books in accordance with the accrual method of accounting.

It is well known that in actual practice few concerns use the cash method or the accrual method of accounting solely and exclusively. It was said in Magill & Maguire's Cases on Taxation (2d Ed.) p. 724:

"Two general types of accounting are commonly in use, a cash method and an accrual method. The distinction between the two is not readily drawn, and *probably few accounts are kept wholly on a single basis.*" (Italics supplied.)

Accordingly, in the administration of the taxing laws, the courts will not be misled by labels, but will determine from an examination of the method of accounting involved whether the cash or accrual method is dominantly employed. As was said by Mr. Justice Stone, in Aluminum Castings Co. v. Routzahn, 282 U.S. 92, at page 99, 51 S.Ct. 11, 14, 75 L.Ed. 234:

"But whether a return is made on the accrual basis, or on that of actual receipts and disbursements, is not determined by the label which the taxpayer chooses to place upon it. The use of inventories, and the inclusion in the returns of accrual items of receipts and disbursements appearing on petitioner's books, indicate *the general and controlling character of the account,* Niles Bement Pond Co. v. United States, 281 U.S. 357, 360, 50 S.Ct. 251, 74 L.Ed. 901; United States v. Anderson, 269 U.S. 422, 423, 46 S.Ct. 131, 70 L.Ed. 347, and support the finding of the trial court that books and returns were on the accrual basis." (Italics supplied.)

See, also, Rouss v. Bowers (C.C.A.2) 30 F.(2d) 628, 629; Estate of Harry E. R. Hall v. Com'r, 29 B.T.A. 1255; Nibley-Mimnaugh Lumber Co. v. Com'r, 32 B.T.A. 791. It follows that under the applicable regulations plaintiff was entitled to use inventories in computing its income.

■ As a defense, the defendant attempted to' cut down the amount recoverable by the plaintiff by the claim that there should have been included in income certain interest deducted during the years 1929 and 1930, the years involved. The claim is that deductions were made for interest paid contrary to the rule in Denman v. Slayton, 282 U.S. 514, 51 S.Ct. 269, 75 L.Ed. 500. The defense was not pleaded. The court is fully aware that under the rule in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, the government in a suit of this type always has the right of determination. That, I take it, however, means that the government may plead and prove à defense showing that the amount recoverable by the plaintiff should be reduced because of errors made in favor of the plaintiff. That the burden of proof is on the government in such instances satisfactorily appears from the following authorities: Popular Price Tailoring Co. v. Commissioner (C.C.A.7) 33 F.(2d) 464; Appeal of General Lead Batteries Co., 2 B.T.A. 392; Henderson Tire & Rubber Co. v. Com'r, 12 B.T.A. 716; Lockport Paper Co. v. Com'r, 9 B.T.A. 601; Estate of Irving Lee Stone v. Com'r, 26 B.T.A. 1. See Com'r v. Stone's Estate (C.C.A.) 61 F. (2d) 1022.

■ However, considering the merits, the government called on this issue Irwin A.

Voltz, formerly employed in the Bureau of Internal Revenue and now supervising tax matters for the Libbey-Owens-Ford Glass Company. He attempted to establish the government's contention by the use of a formula which he admitted was applicable only to dealers in securities dealing only in bonds, that is, municipal bonds of that type, and that he had never heard of its being applied in situations such as we have here. His testimony was of the most indefinite character. Where certainty was required, he often testified that he had only a belief on the matter. The court is fully aware that under the decision of Utah Power & Light Co. v. Pfost, 286 U. S. 165, 190, 191, 52 S.Ct. 548, 555, 76 L. Ed. 1038, fairly accurate estimates may be relied upon in the administration of the taxing laws. It was said in that case (286 U.S. 165, at pages 190, 191, 52 S.Ct. 548, 555, 76 L.Ed. 1038):

"Undoubtedly, the administration of an act like this one is attended with some difficulty. Measurements and calculations are more or less complicated. Absolute precision in either probably cannot be attained; but that is so to a greater or less degree in respect of most taxing laws. If, for example, absolute exactness of determination in respect of net income, deductions, valuation, losses, obsolescence, depreciation, etc., were required in cases arising under the federal income tax law, it is safe to say that the revenue from that source would be much curtailed. The law, which is said not to require impossibilities, must be satisfied, in many of its applications, with fair and reasonable approximations."

In such instances certainty is approximated. In the situation which we have here, there is nothing but indefiniteness, uncertainty, and conjecture. The court cannot and does not accept the testimony of this witness as proof upon the matter of interest.

Other contentions made on behalf of the government have been considered. In my opinion, they are not well taken and do not merit discussion.

Requests for special finding of fact and conclusions of law have been submitted to the court. Counsel should at the earliest possible day meet and agree to these findings and conclusions in so far as possible. As to the matters in which counsel are in disagreement, the court will determine them at an early hearing.

After the findings of fact have been settled, judgments may be entered in favor of the plaintiff in accordance therewith. Such exceptions may be noted as the parties may desire.