RAFAEL A. BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v*. TAX COURT OF PUERTO RICO, Respondent.

No. 41. Argued April 9, 1945.—Decided November 13, 1945.

332

*Jesús A. González, Acting Attorney General,* and *Ramón Gandía Biscombe, Deputy Attorney General,* for petitioner. *J. J. Ortiz Alibrán* for intervener, complainant in the main proceeding.

MR. JUSTICE SNYDER delivered the opinion of the court.

The Treasurer notified the taxpayer of a deficiency for its 1935 income tax resulting from the disallowance by the Treasurer of certain deductions made by the corporation in its return. The Tax Court sustained the action of the Treasurer, execpt that it upheld the contention of the taxpayer that it was entitled to deduct three payments made by the corporation in *1935* for services rendered in *1934;* as follows: (1) $400 for attorney's fees; (2) $500 for fees of an engineer; (3) $4,500 for six months salary of the president of the corporation. We granted the petition of the Treasurer to review the decision of the Tax Court as to these three items.

The controversy revolves principally around the method of accounting of the corporation—whether its books should have been kept on the cash or accrual basis.[1] How-

---

[1] Under the cash basis, items of income and deductions are recorded as they are actually received or paid. Items of income due to the taxpayer, but not

ever, as to the first two items, the Treasurer cannot prevail even if we agree with his contention that the books were, or should have been, kept on the accrual basis.

The attorney and engineer did not submit bills until 1935, although their services were rendered in 1934. And the record shows no previous agreement fixing their compensation. Consequently, the corporation had no way of knowing until 1935 what its liability would be as to these two items.

As pointed out in 2 Mertens, Law of Federal Income Taxation, § 12.91, p. 273-4, "The basic test of whether an expense item may be accrued lies in the question whether liability is fixed. Ordinarily, it is not fixed if it is contested. . . If they are contingent as to liability, expenses are not incurred and may not be deducted by taxpayers on the accrual basis. The theory is that until all the events have occurred which fix the amount to be deducted and determine the liability to pay, there is no basis for a deduction. . . .

"A few examples will serve to give further point to the general principles stated in this section. . . . Attorney's fees have been denied as accrued expenses." See *American Industrial Corporation* v. *Com'r*, 20 B. T. A. 188, 202 (1930). Cf. Article 70 of our Income Tax Regulations; 51 Harv. L. Rev. 1115.[2]

We are not to be understood as holding that the expenses or income of one year of a taxpayer on the accrual basis can

---

yet received, or expenses incurred, but not yet paid, are not included until they are actually received or paid by the taxpayer.

If items of income are recorded when the right to receive them becomes fixed (whether received or not); and if expenses are recorded at the time the liability for them arises (whether paid or not), then accounts are said to be kept on a an accrual basis. See *U. S.* v. *Anderson*, 269 U.S. 422, 441; *Brown* v. *Helvering*, 291 U. S. 193; *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, 184; *Niles Bement Pond Co.* v *U. S.*, 281 U. S. 357, 360; *Uncasville Mfg. Co.* v. *Com'r* 55 F. (2d) 893, 895 (CCA 2, 1932); Magill, Taxable Income, Revised Edition, Chapter 5, *passim*.

[2] "An officer of a corporate taxpayer was also an attorney at law. As attorney he performed certain services for the corporation in 1937. The corporation, which was on an accrual basis, did not know the amount of this charge until January, 1938. It was held that the expense was properly deductible in

always be safely shifted to a subsequent year under an arrangement whereby the bill of the recipient is deliberately withheld until the suceeding year. See Article 111 of the Regulations. But if as·here such a taxpayer, acting in good faith and through no fault or action of its own, did not ascertain in 1934 its liability for 1934 services simply because of the failure to receive a bill for a specific amount until 1935, the liability of the corporation does not accrue until 1935.[3]

The net result is that if, as the taxpayer contends, its books, as to these items, were kept on a cash basis, they were deductible in 1935 because they were actually disbursed in that year. On the other hand, even if, as the Treasurer contends, the books were kept, or should have been kept, on an accrual basis, these two items did not actually accrue until 1935. The Tax Court therefore acted correctly in sanctioning the deduction in 1935 of these two items of expense.

■■ The remaining item involves the salary of the president of the corporation for the last six months of 1934. The president, who was paid $9,000 a year, was out of Puerto Rico during the six months in question, partly for his health and partly in the service of the corporation. The president testified: "Upon my return I found that the company had not credited me with that sum. I claimed it, and then the company paid it to me in 1935."

The corporation does not contend that it ever disputed its liability for the said salary. If that were the case, for the reasons already stated as to the first two items, the corpo-

---

1938, as taxpayer then had for the first time knowledge of sufficient facts to determine its liability. Motion Picture Corporation of California, B. T. A. Memo. Op., Dkt. 104651 (Feb. 17, 1942)." 2 Mertens, *supra*, 1945 Supplement, p. 81. See *Com'r of Internal Revenue* v. *Blaine, Mackay, Lee Co.*, 141 F (2d) 201 (CCA 3, 1944);· *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115. Cf. *Searles Real Estate Trust* v. *Commissioner*, 25 B. T. A. 1115 (1932).

[3] The tax liability for *receipt* of such a fee by a professional man, who is usually on a cash basis, raises a different question, on which we make no comment. Cf. *Pletz* v. *Com'r*, 43 B. T. A. 140 (1940); *Freeman* v. *United States*, 3 F. Supp. 301, a ff'd in 71 F. (2d) 969 (CCA 3, 1934); Magill, *supra*, p. 182.

ration could perhaps argue that its liability therefor having become fixed for the first time in 1935, disbursement thereof in 1935 entitled it to claim a deduction in 1935, whether its books were kept on the cash or the accrual basis.

Instead the corporation in effect concedes that the salary was an ordinary, fixed salary which was undisputedly earned in 1934. Nevertheless, it contends that payment thereof in 1935 entitled it to a deduction in its 1935 return because it kept its books on the cash basis. We must therefore look to the taxpayer's method of accounting to dispose of this item.

On direct examination the accountant of the corporation testified in a general way that the taxpayer kept its books on the cash basis "With certain exceptions. . . in some cases there are big invoices that are entered in the books, which are credited in the corresponding accounts and are paid as soon as funds are available. But generally small expenses, salaries, bonds, are paid and they are debited when they are actually paid."

On cross-examination the accountant persisted in his statement that its method of accounting was the cash basis, in the face of his own testimony on cross-examination as follows: "Q. Do you say that the corporation is engaged in the purchase and sale of molasses, the manufacture of alcohol, liquors, perfumes and in all the manufacture and industrial or mercantile operations resulting from those products? A. Yes, sir. Q. Is the corporation engaged in that? A. Yes, sir. Q. When you took your inventory and prepared the profit and loss statement, in order to determine the net profit, did you take into account the inventories at the beginning and the end of the year? A. Yes, sir. Q. Then is that what you call the 'cash basis' system? A. Yes, sir. Q. Are you acquainted with the 'accrual' system, known in Spanish as *'incurrido y devengado'*? A. Yes, sir. Q. Do you know if for the inventory system you must operate on the basis of the accrual method? A. Yes, sir."

It is true that no uniform method of accounting is prescribed by the Income Tax Act. Article 66 of the Regulations. However, § 14 (*b*) of the Act provides that ". . . net income shall be computed. . . in accordance with the method of accounting regularly employed in keeping the books. . .; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Treasurer does clearly · reflect ˙the income."

Articles 63–66 of the Regulations are designed to implement § 14(*b*). They provide that (Article 63) "Income can not be determined merely by reckoning cash receipts, for the Act recognizes as income-determining factors other items, among which are inventories, . . ." And that (Article 65) "A method of accounting will not. . . be regarded as reflecting income unless all items of gross income and all deductions are treated with reasonable consistency."

We also find in Article 45 of the Regulations the following: "In order to reflect the net income correctly, inventories at the beginning and end of each year are necessary in every case in which the production, purchase, or sale of merchandise ·is an income-producing factor."

Most important of all, our Regulations recognize that "in any case in which it is necessary to use an inventory, no accounting in regard to purchases and sales will correctly reflect income except an accrual method." (Article 65.)

In view of the above, we are unable to reconcile the testimony of the accountant that the corporation was on a cash basis with his subsequent testimony that the corporation made inventories, which in turn, according to his own testimony, required the books to be kept on the accrual basis.[4]

---

[4] "The' Treasury no longer attributes any magic power to the description of methods as 'cash' or 'accrual'. . ." 2 Mertens, *supra*, § 12.05, p. 134. The facts are controlling, and not any label the taxpayer chooses to affix to his method of accounting. See *Squire* v. *Denman*, 18 F. Supp. 287, aff'd in 111 F. (2d) 921 (CCA 6, 1940).

The Tax Court attempted to get around this difficulty by calling the corporation's method of accounting "hybrid" and by asserting that it was proper for the taxpayer to handle some of its transactions on the accrual basis, and others on the cash basis. In support of this position, the Tax Court cited 2 Mertens, *supra*, § 12.05, p. 134.

Mertens does indicate at p. 134 that "The peculiarities of a particular taxpayer's business may require some departures from either a strict cash or accrual method." Assuming, without deciding, that we would, in some of the situations discussed by Mertens, condone such a practice (cf. *Mass. Mutual Life Ins. Co.* v. *U. S.*, 288 U. S. 269, 273–74; *Security Mills Co.* v. *Com'r*, 321 U. S. 201, 287), we find nothing in the testimony herein to justify that action for the ordinary merchandising business of this corporation.

The accountant's own testimony was to the effect that a merchandising business, requiring an inventory, called for use of the accrual method. Nevertheless, he did not attempt to justify the alleged use of the cash method; his only explanation—that the cash method was used except for certain large transactions for which cash was not immediately available—is certainly not sufficient to warrant departure from the accrual method for this merchandising business. Whether the transactions are large or small, ordinarily a merchandising business with inventories requires the accrual method.[5]

We note in passing that if we had found it possible to permit the use of both methods of accounting by this corporation, the only item now under consideration—the salary of the president—could not be handled on the cash basis. The president himself testified that "everything related to the

---

[5] Indeed, the very same Section of Mertens cited by the Tax Court points out at p. 134 what we have already noted in our Regulations: ". . .the taxpayer cannot arbitrarily depart from the general method of accounting which he uses. All items of gross income and all deductions must be 'treated with reasonable consistency'; where inventories are involved, no method of accounting will clearly reflect income 'except an accrual method.'" See 51 Harv. L. Rev. 716, 721.

business of the company: sales, purchases, etc.'' was under his control. But if the merchandising phase of the business, including the income therefrom and inventories, concededly must be handled by the accrual method, the salary of the president, who has sales duties, cannot be singled out, lifted out of the accrual method, and transferred to a cash basis. That is to say, if the accrual method must be used for sales income in a merchandising business, the cash method cannot arbitrarily be used for sales expenses incurred to produce such income.

''Notwithstanding the option given taxpayers, it is the purpose of the Act to require returns that clearly reflect taxable income. That purpose will not be accomplished unless income received and deductible disbursements made are treated consistently. . . It is a reasonable construction of the law that the same method be applied to both sides of the account.'' *United States* v. *Mitchell,* 271 U. S. 9, 12–13. See also *Mass. Mutual Life Ins. Co.* v. *U. S.,* 288 U. S. 269; *Fackler* v. *Com'r,* 39 B. T. A. 395 (1939); 2 Mertens, *supra,* § 12.08, pp. 141–42.

The Treasurer was therefore justified in concluding that the cash method did not clearly reflect the income of the corporation, as to the 1934 fixed salary of the president, which could be classified only on the accrual basis. He was consequently entiled, pursuant to § 14 (*b*) of the Act and Article 64 of the Regulations, to disallow a deduction in 1935 for payment of the said 1934 salary in 1935 on the ground that the salary accrued in 1934 and should under the accrual method have been deducted in that year.

The decision of the Tax Court will be modified by restoring that portion of the deficiency relating to the salary of the president. As thus modified, the decision will be affirmed and the case remanded for further proceedings not inconsistent with this opinion.