Rafael A. Buscaglia, Tesorero de Puerto Rico, peticionario, *v.* Tribunal de Contribuciones de Puerto Rico, demandado.

Núm. 41.—*Sometido:* Abril 9, 1945. *Resuelto:* Noviembre 13, 1945.

*Hon. Procurador General Interino Jesús A. González y Ramón Gandía Biscombe, Procurador General Auxiliar,* abogados del peticionario; *J. J. Ortiz Alibrán,* abogado de la interventora, querellante en el pleito principal.

El JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El Tesorero de Puerto Rico notificó a la contribuyente una deficiencia en su planilla de contribuciones sobre ingresos correspondiente al 1935 con motivo de haber el Tesorero rechazado ciertas deducciones hechas por la corporación en su referida planilla. El Tribunal de Contribuciones confirmó la acción del Tesorero, excepto que sostuvo la contención de la contribuyente de que tenía el derecho a deducir tres pagos hechos por ella en *1935* por servicios prestados en *1934,* como sigue: (1) $400 por honorarios de abogado; (2) $500 por honorarios de ingeniero; (3) $4,500 que representan 6 meses de sueldo del Presidente de la corporación. A solicitud del Tesorero, expedimos el auto de *certiorari* para revisar la decisión del Tribunal de Contribuciones en cuanto a estas tres partidas.

Fundamentalmente la controversia gira alrededor del sistema de contabilidad empleado por la corporación— si sus libros se debieron llevar sobre la base de "cobrado y pagado" (*cash basis*) o sobre la base de "incurrido y devengado" (*accrual basis*).([1]) Sin embargo, en cuanto a las

---

([1])Bajo el sistema de "cobrado y pagado", las partidas de ingreso y egreso son asentadas según éstas se reciban o se paguen. Las partidas de ingresos adeudados al contribuyente, pero no recibidos, o los gastos incurridos, pero aún no pagados, no se incluyen hasta que son de hecho recibidos o pagados por el contribuyente.

Si las partidas de ingreso se asientan cuando se fija el derecho a recibirlas (ya se hayan recibido o no); y si se asientan los gastos al tiempo de surgir la responsabilidad de pagarlos (ya se paguen o no), entonces decimos que los libros se llevan por el sistema de "incurrido y devengado". Véase *U. S. v. Anderson,* 269 U.S. 422, 441; *Brown v. Helvering,* 291 U. S. 193; *Spring City Foundry Co. v. Commissioner,* 292 U. S. 182, 184; *Niles Bement Pond Co. v. U. S.,* 281 U.S. 357, 360; *Uncasville Mfg. Co. v. Com'r.,* 55 F.2d 893, 895 (C.C.A. 2d, 1932); Magill, *Taxable Income, Revised Edition,* Capítulo 5, *passim.*

dos primeras partidas, no puede prevalecer el criterio del Tesorero aun cuando conviniéramos con su contención de que los libros eran llevados, o debieron llevarse, sobre la base de "incurrido y devengado".

El abogado y el ingeniero no enviaron sus cuentas hasta el 1935, si bien sus servicios se prestaron en 1934. Y el récord no contiene convenio anterior alguno que fijara sus honorarios. En su consecuencia, la corporación no tenía modo de enterarse hasta el 1935 de cuál sería su responsabilidad en cuanto a estas dos partidas.

Como se indica en 2 Mertens, *Law of Federal Income Taxation*, Sección 12.91, págs. 273-4, "La fórmula básica para determinar si una partida de gastos puede ser incurrida, está predicada en la cuestión de haberse fijado la responsabilidad. De ordinario, ésta no se fija si dicha partida está en controversia . . . Si los gastos son indeterminados en cuanto a responsabilidad, éstos no han sido incurridos y no pueden deducirse por los contribuyentes que operan sobre la base de 'incurrido y devengado'." La teoría es que hasta que hayan ocurrido todos los sucesos que fijen la suma a ser deducida y que determinen la responsabilidad de hacer el pago, no hay base para una deducción. . . .

"Algunos ejemplos servirán para demostrar los principios generales expuestos en esta sección . . . Los honorarios de abogado han sido denegados como gastos incurridos." Véase *American Industrial Corporation* v. *Com'r*, 20 B.T.A. 188, 202 (1930). *Cf.* artículo 70 de nuestro Reglamento sobre Contribuciones sobre Ingresos; 51 Harv. L. Rev. 1115.(²)

---

(²)"Un oficial de una corporación contribuyente también era abogado. Como tal abogado prestó ciertos servicios a la corporación en 1937. La corporación, que operaba el sistema de 'incurrido y devengado', no supo el montante de su cuenta hasta enero de 1938. Se resolvió que el gasto era correctamente deducible en 1938, toda vez que la contribuyente tuvo por primera vez conocimiento de hechos suficientes para determinar su responsabilidad. *Motion Picture Corporation of California*, 46 B.T.A. 1278, Memo. Op. Dkt. 104651 (Feb. 17, 1942)." 2 Mertens, supra, 1945 Suplemento, pág. 81. Véase *Com'r of Internal Revenue* v. *Blaine, Mackay, Lee Co.*, 141 F.2d 201 (C.C.A. 3d, 1944); *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115. *Cf. Searless Real Estate Trust* v. *Commissioner*, 25 B.T.A. 1115 (1932).

No debe interpretarse como que resolvemos que los gas- tos o ingresos de un año de un contribuyente que opera sobre la base de "incurrido y devengado," pueden ser siempre transferidos sin riesgo alguno a cualquier año posterior bajo un convenio en el que la factura del acreedor sea deliberadamente retenida hasta el año siguiente. Véase el artículo 111 del Reglamento. Pero como ocurre en este caso la contribuyente, actuando de buena fe y sin que medie culpa o actuación de su parte, no determinó en 1934 su responsabilidad por los servicios de 1934 simplemente por no haber recibido hasta el 1935 una cuenta por una suma específica, la responsabilidad de la corporación no se incurre hasta 1935.(³)

El resultado práctico es que si, según alega la contribuyente, sus libros, en cuanto a estas partidas, eran llevados sobre la base de "cobrado y pagado", éstas eran deducibles en 1935 porque de hecho fueron desembolsadas en dicho año. Por otro lado, aun si los libros fueron llevados, o debieron haberse llevado, según alega el Tesorero, sobre la base de "incurrido y devengado", estas dos partidas de hecho no se incurrieron hasta el 1935. El Tribunal de Contribuciones por tanto actuó correctamente al permitir la deducción en 1935 de estas dos partidas de gastos.

 La partida restante envuelve el sueldo del Presidente de la corporación por los últimos seis meses de 1934. El Presidente, a quien se le pagaban $9,000 anuales, estuvo fuera de Puerto Rico durante los seis meses en cuestión, en parte por motivos de salud y en parte prestando servicios a la corporación. El Presidente declaró: "al regresar me encontré con que la compañía no me había abonado esa canti-

---

(³)La responsabilidad contributiva de un profesional, que usualmente opera sobre la base de "cobrado y pagado", al *recibir* tales honorarios, levanta una cuestión diferente, sobre la cual no exponemos comentario alguno. *Cf. Pletz* v. *Com'r*, 43 B.T.A. 140 (1940); *Freeman* v. *United States*, 3 F. Supp. 301, confirmado en 71 F.2d 969 (C.C.A. 3d, 1934); Magill, supra, pág. 182.

tidad. Yo la reclamé y entonces la compañía me la pagó en 1935.''

La corporación no alega que negara en algún momento su responsabilidad por dicho sueldo. De ser ése el caso, por los motivos ya expuestos en cuanto a las dos primeras partidas, quizás la corporación podría argüir que su responsabilidad por dicho sueldo habiendo sido fijada por primera vez en 1935, el haberse pagado el mismo en 1935 le daba derecho a reclamar una deducción en 1935, ya se llevaran sus libros sobre la base de ''cobrado y pagado'' o ya sobre la base de ''incurrido y devengado''.

Por el contrario, la corporación en efecto admite que el sueldo era un sueldo fijo y corriente que se devengó fuera de toda duda en 1934. Sin embargo, alega que el pago del mismo en 1935 le daba derecho a una deducción en su planilla de 1935 ya que llevaba sus libros sobre la base de ''cobrado y pagado''. Por tanto, para resolver en cuanto a esta partida, debemos remitirnos al sistema de contabilidad de la contribuyente.

En el interrogatorio el contable de la corporación declaró de manera general que la contribuyente llevaba sus libros sobre la base de ''cobrado y pagado'' ''Con ciertas excepciones . . . . en algunos casos hay facturas grandes que se asientan en unos libros, se acreditan en las cuentas correspondientes y se pagan tan pronto hay fondos disponibles. Pero generalmente los gastos pequeños, sueldos, fianzas, se pagan, se cargan cuando realmente se pagan.''

En el contrainterrogatorio el contable insistió en su declaración que el método de contabilidad era sobre la base de ''cobrado y pagado'', a pesar de su declaración en el contrainterrogatorio como sigue: ''P. ¿Dice usted que la corporación se dedica a la compra y venta de mieles, fabricación de alcoholes, licores, perfumes, y todas aquellas manufacturas y explotaciones industriales o mercantiles que se derivan de esos productos? R. Sí, señor. P. ¿A eso se de-

dica la corporación? R. Sí, señor. P. Cuando ustedes pasaban balance y al preparar el estado de ganancias y pérdidas para desde luego determinar el beneficio, ¿tomaban ustedes en consideración los inventarios a principio y final de año? R. Sí, señor. P. ¿Entonces ése es el sistema de 'cash basis'? R. Sí, señor. P. ¿Usted conoce lo que es el sistema de 'accruals', en español, 'incurrido y devengado'? R. Sí señor. P. ¿Sabe si para el sistema de inventario es necesario llevarse sobre la base de 'incurrido y devengado'? R. Sí, señor.''

Es cierto que la Ley de Contribuciones sobre Ingresos no prescribe ningún sistema uniforme de contabilidad. Artículo 66 del Reglamento. Sin embargo, la sección 14(b) de la Ley dispone que: '' . . . ingreso neto será computado ... de acuerdo con el sistema de contabilidad usado regularmente por el contribuyente en sus libros; pero si él no llevare libros de contabilidad, o si el sistema usado no refleja claramente su ingreso, la computación será hecha de acuerdo con el sistema que en opinión del Tesorero refleje claramente el ingreso.''

Los artículos 63–66 del Reglamento fueron promulgados para implementar la sección 14(b). Disponen que (Artículo 63) ''El ingreso no puede ser determinado meramente calculando el recibo de efectivo, ya que la Ley reconoce otras partidas como factores determinantes del ingreso, tales como inventarios, . . . ''. Y que (Artículo 65) ''Un sistema de contabilidad no puede . . . ser considerado como que refleja el ingreso a menos que todas las partidas de ingreso bruto y todas las deducciones sean tratadas con razonable consistencia.''

También encontramos en el artículo 45 del Reglamento lo siguiente: ''Para que se refleje el ingreso neto fielmente, inventarios al principio y final de cada año son necesarios en todo caso en que la producción, compra, o venta de mercadería sea un factor de ingreso.''

Y lo más importante de todo, nuestro Reglamento reconoce que "encualquier caso en que se haga necesario el uso de un inventario, ningún asiento relacionado con compras y ventas podrá fielmente reflejar un ingreso excepto el sistema de 'incurrido y devengado' ".¹ (Artículo 65).

En virtud de lo antes expuesto, no podemos concordar el testimonio del contable al efecto de que la corporación operaba sobre la base de "cobrado y pagado" con su testimonio posterior de que la corporación preparaba inventarios los que, de conformidad con su propia declaración, exigía que los libros se llevasen sobre la base de "incurrido y devengado".(⁴)

El Tribunal de Contribuciones trató de vencer esta dificultad llamando "híbrido" el sistema de contabilidad de la corporación y afirmando que era propio para la contribuyente asentar algunas de sus transacciones sobre la base de "incurrido y devengado" y otras sobre la base de "cobrado y pagado." Para sostener esta posición, el Tribunal de Contribuciones citó 2 Mertens, supra, sección 12.05, pág. 134.

Mertens indica a la pág. 134 que "Las peculiaridades de un negocio de determinado contribuyente pueden requerir algunas desviaciones bien de un estricto sistema de contabilidad de 'cobrado y pagado' o de 'incurrido y devengado'." Asumiendo, sin decirlo, que en alguna de las situaciones discutidas por Mertens, permitiríamos tal práctica (*Cf. Mass. Mutual Life Ins. Co.* v. *U. S.,* 288 U. S. 269, 273–74; *Security Mills Co.* v. *Com'r,* 321 U. S. 281, 287) nada encontramos en la prueba en este caso que justifique dicha acción para el negocio corriente de compraventa de esta corporación.

---

(⁴) "Ya el Tesorero no atribuye poder mágico alguno a la descripción de sistemas tales como 'cobrado y pagado' o 'incurrido y devengado' . . ." 2 Mertens, supra, sección 12.05, pág. 134. Los hechos predominan, y no cualquier denominación que el contribuyente elija para aplicársela a su sistema de contabilidad. Véase *Squire* v. *Denman,* 18 F. Supp. 287, confirmado en 111 F.2d 921 (C.C.A. 6, 1940).

El testimonio del propio contable es al efecto de que un negocio de compraventa, que requiera inventario, exige que se emplee el sistema de "incurrido y devengado". Sin embargo, no trató de justificar el alegado uso del sistema de "cobrado y pagado"; su única explicación—que el sistema de "cobrado y pagado" se usaba excepto para algunas transacciones grandes para las cuales no habían disponibles suficientes fondos—ciertamente no es suficiente para justificar la desviación del sistema de "incurrido y devengado" para este negocio de compraventa. Ya sean las transacciones grandes o pequeñas, de ordinario un negocio de compraventa que necesita inventarios requiere el sistema de "incurrido y devengado".([5])

Indicamos de paso que aun si hubiéramos encontrado que era posible el permitir el uso de ambos sistemas de contabilidad por esta corporación, la única partida ahora bajo nuestra consideración—el sueldo del Presidente—no podía asentarse sobre la base de "cobrado y pagado". El mismo Presidente declaró que "Todo lo relacionado con el negocio de la compañía: ventas, compras, etc." estaba bajo su control. Pero si se admite que el aspecto de compraventa del negocio, incluyendo su ingreso y los inventarios, deben tramitarse por el sistema de "incurrido y devengado", el sueldo del Presidente, que tiene obligaciones de venta, no puede separarse, sacarse del sistema de "incurrido y devengado", y transferirse a un sistema de "cobrado y pagado". Es decir, si el sistema de "incurrido y devengado" debe usarse para ingreso proveniente de ventas en un negocio de compraventa, el sistema de "cobrado y pagado" no puede ar-

---

([5])En verdad, la misma sección de Mertens citada por el Tribunal de Contribuciones dice a la pág. 134 lo que ya hemos indicado en nuestro Reglamento: ". . . el contribuyente no puede arbitrariamente desviarse del sistema general de contabilidad que usa. Todas las partidas de ingreso bruto y todas las deducciones deben ser 'tratadas con razonable consistencia'; cuando están envueltos inventarios, ningún sistema de contabilidad reflejará claramente el ingreso 'a menos que sea el sistema de "incurrido y devengado" ' ' ". Véase 51 Harv. Law. Rev. 716, 721.

bitrariamente usarse para gastos de venta incurridos para producir tal ingreso.

"No obstante la opción concedida a los contribuyentes, es el propósito de la Ley exigir planillas que claramente reflejen el ingreso tributable. Dicho fin no puede cumplirse a menos que el ingreso recibido y los egresos a deducirse sean tratados consistentemente. . . Es una interpretación razonable de la Ley de que el mismo sistema debe aplicarse a ambos lados de la cuenta." *United States* v. *Mitchell,* 271 U. S. 9, 12–13. Véase además *Mass. Mutual Life Ins. Co.* v. *U. S.,* 288 U. S. 269; *Fackler* v. *Com'r,* 39 B.T.A. 395 (1939); 2 Mertens, supra, sección 12.08, págs. 141–42.

Por tanto, el Tesorero estuvo justificado al concluir que el sistema de "cobrado y pagado" no reflejaba claramente el ingreso de la corporación, en cuanto al sueldo de 1934 fijado al Presidente, que podía clasificarse solamente bajo el sistema de "incurrido y devengado". En su consecuencia, tenía derecho, de conformidad con el artículo 14(*b*) de la Ley y el artículo 64 del Reglamento, a rechazar la deducción en 1935 por el pago del referido sueldo de 1934 en 1935, por el fundamento de que el sueldo se devengó en 1934 y debió, bajo el sistema de "incurrido y devengado", haberse deducido en dicho año 1934.

La decisión del Tribunal de Contribuciones será modificada restableciendo aquella parte de la deficiencia que se relaciona con el sueldo del Presidente. *Así modificada, se confirmará la decisión y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.*