RAMOS HERMANOS, demandante y recurrente, *v.* JOSÉ R. NOGUERA, SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número*: R-62-75          *Resuelto*: 16 de diciembre de 1963

*Brown, Newsom & Córdova,* abogados de la recurrente; *J. B. Fernández Badillo, Procurador General, y Juan A. Faría, Procurador Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Ramos Hermanos, una sociedad civil con fines agrícolas constituida en 23 de febrero de 1951, compró en 6 de marzo siguiente una finca rústica de aproximadamente 653 cuerdas ubicada en el municipio de Carolina, así como la plantación de cañas en pie, y los edificios, cierta maquinaria y el equipo apropiado para tal explotación. En términos generales, sus actividades hasta el fin de dicho año consistieron en la recolección de la plantación adquirida y en el cultivo y preparación

de la del año siguiente. La declaración de ingresos rendida cubrió el período de 6 de marzo al 31 de diciembre de 1951, fue sometida a base del sistema de pagado y recibido (*cash basis*), y resultó en una pérdida de $58,792.61.[1]

En la declaración de ingresos del año natural 1952, la sociedad incluyó como ingresos ($103,991.10) todo el dinero recibido por la venta de su cosecha de 1952, venta de mieles y del azúcar excedente del anterior, así como por compensaciones de dos agencias federales. Reclamó como deducciones el total de gastos incurridos para esa cosecha y la del siguiente año ($93,345.16), pero difirió para el 1953 los gastos que correspondían a la plantación en pie en el último día del año contributivo ($44,931.74).[2] Como consecuencia de este diferimiento de gastos, declaró un beneficio en sus opera-

---

[1] Los ingresos declarados consistieron en el importe recibido por la venta de la plantación cosechada ($78,637.72), los pagos de beneficio de la Administración de Producción y Mercadeo ($18,625.94) y la participación del colmo en las mieles producidas ($6,198.78). En total, $103,462.44.

En las deducciones reclamadas que ascendieron a $162,255.05 se incluyó, no sólo el costo original de la plantación en pie según pactado en la escritura de compraventa ($69,000), sino los gastos para su corte y arrimo, y el de la preparación y el cultivo de la cosecha de 1952. Entre otros gastos, se reclamaron jornales ($62,583.12), abonos ($17,844.79), y compra de semillas ($875.00). Estas dos últimas partidas, así como una parte de la primera son gastos de la plantación del año 1952, pues en marzo 6, fecha en que se adquirió la plantación de 1951, ésta tenía que estar prácticamente cerrada y lista para recolección, y los únicos gastos pendientes eran los de su corte y arrimo.

[2] Estos gastos se desglosaron en la declaración de ingresos en la siguiente forma:

| | |
|---|---|
| Cultivo | $21,227.47 |
| Misceláneas | 5,255.09 |
| Abonos y yerbicidas | 17,241.40 |
| Seguro obreros | 1,143.20 |
| Alimento para ganado | 64.58 |
| | $44,931.74 |

ciones para el año 1952 que ascendió a $55,577.68,(³) pero como arrastró la pérdida del año anterior ($58,792.61), determinó una pérdida neta de $3,214.93.

Para una mejor comprensión de la verdadera cuestión envuelta en este recurso nos apartaremos por un momento de la relación escueta de los hechos para hacer una interpretación de los mismos. La actuación de la contribuyente en 1952 al diferir parte de los gastos incurridos y pagados dentro del año contributivo le permitió aprovecharse casi a plenitud de la pérdida del año anterior, que la ley entonces en vigor le autorizaba para arrastrar solamente por el año siguiente, llamado "segundo año."(⁴) El resultado si no se hubiese diferido el importe de los gastos incurridos en 1952 correspondientes a la cosecha del año 1953, y se hubiese seguido estrictamente el método de pagado y recibido a que se había acogido durante el primer año de sus operaciones, es que la sociedad hubiese determinado una pérdida neta de $48,046.67,(⁵) *la cual no hubiese podido arrastrar para el año 1953.*

En 24 de marzo de 1953, la sociedad recurrente vendió la finca a don Rafael Torrech Ríos, incluyendo las plantaciones, las edificaciones, el equipo y las raíces o tocones, distribu-

---

(³) 
| Ingresos Totales | $103,991.10 |
|---|---|
| Gastos no Diferidos | 48,413.42 |
| Beneficio | $55,577.68 |

(⁴) Sec. 9 de la Ley de Contribución sobre Ingresos de 1924, 13 L.P.R.A. (1955) sec. 667(b).

Para el monto de pérdidas a retrotraerse y a arrastrarse bajo la Ley de Contribución sobre Ingresos de 1954, véase, la sec. 122 de la Ley Núm. 91 de 29 de junio de 1954, 13 L.P.R.A. (1962) sec. 3122.

(⁵)
| Ingresos Totales | $103,991.10 |
|---|---|
| Menos Deducciones | 93,345.16 |
| Beneficio en Operaciones | $10,645.94 |
| Pérdida año 1951 | ($58,792.61) |
| Pérdida Neta | ($48,046.67) |

yéndose el precio de venta en la siguiente forma: terrenos, $170,000; edificaciones, $2,500; equipo, $15,800; "cosecha," $58,000, y raíces, $3,700.00. ([6])

En la declaración de ingresos correspondiente al año 1953, la sociedad informó un ingreso bruto de $4,386.00 que se compuso de dos partidas: venta de azúcares excedentes del año anterior, $4,104.10, y, beneficio en la transacción de venta a que nos referimos en el párrafo anterior, $281.90. Lo que realmente nos interesa es que se fijó el costo de la "cosecha" en $47,695.60, según se señala a continuación:

| | | |
|---|---|---|
| "Costo del cultivo, etc. (gastos efectuados en 1952 diferidos en ese año por corresponder a la cosecha del año 1953, *y que representa costo de lo vendido* | | $44,931.74 |
| Otros gastos de cosecha, efectuados desde 1/1/53 a 3/24/53 | | 2,072.60 |
| Gastos misceláneos del cultivo desde 1/1/53 a 3/24/53 | | 1,703.89 |
| | | $48,708.23 |
| Menos: Ajustes por primas de seguro de Obrero (2do semestre de año 1952–53) según liquidación de 12/24/53 | $1,139.55 | |
| Cargo por primas del año 1951–52 según reliquidación de 9/16/53 | 126.92 | 1,012.63 |
| | | $47,695.60" |

([6]) Es curioso que el precio de venta de los terrenos, las edificaciones y las raíces corresponde exactamente con el de su adquisición dos años antes, según la escritura Núm. 12 de 6 de marzo de 1951 ante el Notario Víctor A. Coll, de forma que ningún beneficio se determinó en la disposición de estos activos de capital.

En cuanto al equipo se determinó una pequeña pérdida de $597.00, pues a la fecha de la venta su costo menos la depreciación acumulada era de $16,397.00.

Resulta, por tanto, que todo el beneficio en la "operación de compraventa" se atribuyó a la disposición de la plantación, en relación con la cual se había diferido la suma de $44,931.74.

El Secretario de Hacienda determinó un beneficio de $45,213.64 en la disposición de la finca, al rechazar los gastos de cultivo diferidos del año 1952 como parte del costo de la plantación vendida. En la notificación de deficiencia hizo constar como fundamento que tal partida se había "[e]liminado por corresponder al año 1952 ya que estos gastos se pagaron en ese año y deben deducirse para esa fecha de acuerdo con el sistema '*cash*'."

La sociedad acudió ante el Tribunal Superior, Sala de San Juan, para impugnar la deficiencia impuéstale y alegó expresamente, en lo pertinente, que a los fines de determinar el beneficio obtenido "*en la venta de una finca*" en el año 1953 tenía derecho a incluir "como parte del costo de dicha *finca*" la suma de $47,695.60, "costo del cultivo de caña en la finca." La posición asumida en forma consistente por el Secretario durante la vista del caso fue que la actuación de la contribuyente al diferir para 1953 parte de los gastos en que efectivamente incurrió y pagó en 1952 constituía un cambio en su sistema de contabilidad para el cual no se había solicitado ni obtenido su consentimiento; la recurrente adujo que en vista de que para fines del 1952 había desistido de continuar en la explotación agrícola y se proponía realizar una venta de la finca—como en efecto se realizó en 1953—tales gastos se consideraron como costo para determinar el beneficio obtenido en la transacción de compraventa. Es por primera vez en el alegato que radicó ante el tribunal a quo que tímidamente se hace referencia al cambio que del sistema de pagado y recibido al de inventario se permitía por el Art. 50 del Reglamento de 1924, que lee así: (⁷)

"*Inventarios de ganaderos y otros agricultores*—(1) Un agricultor puede rendir su planilla sobre un sistema de inventario

---

(⁷) Este artículo sigue sustancialmente el texto de la primer parte del Art. 22(c)-6 del Reglamento de 1954, 13 R.&R.P.R. sec. 3022(c)-6, y por eso, en lo posible, hemos seguido su redacción al traducirlo.

en lugar del sistema de recibido y pagado siempre que se hagan los ajustes correspondientes conforme a cualquiera de los dos métodos que se reseñan posteriormente bajo las letras (A) y (B). Queda a opción del contribuyente el decidir cuál de estos dos sistemas ha de usarse, pero una vez que haya optado por un sistema la opción así ejercida será obligatoria para dicho contribuyente y no podrá rendir planilla enmendada bajo cualquier otro sistema.

"(A) Se utlizarán inventarios inicial y final del año contributivo en que se haga el cambio. Se incluirán en el inventario inicial todos los productos agrícolas (incluyendo ganado), comprados o criados (purchased or raised) por el contribuyente y que estaban en existencia a la fecha del inventario, y deberá someterse conjuntamente con la planilla para el año contributivo corriente una hoja de ajuste para el año contributivo anterior basada en el método de inventario, sobre el monto de cuyo ajuste la contribución habrá de tasarse y pagarse (si alguna resultare adeudada) al tipo contributivo en vigor para ese año. Generalmente, será suficiente una hoja de ajuste para el año anterior, pero si, en opinión del Secretario tal ajuste no fuere suficientemente claro para reflejar correctamente el ingreso, se aceptarán o requerirán ajustes para años anteriores. Si fuere imposible someter inventarios completos para el año o los años anteriores, el Secretario aceptará los cálculos que, en su opinión reflejen sustancialmente el ingreso sobre una base de inventario para tal año o años anteriores; pero los inventarios no deberán incluir terrenos, edificios, mejoras permanentes, o ningún otro activo sujeto a depreciación.

"(B) No se requerirán hojas de ajuste, pero el ingreso neto para el año contributivo en que se haga el cambio deberá ser determinado sin deducir de la suma del inventario final y las ventas y otros ingresos, el inventario de ganado, cosechas, y otros productos al comienzo del año, disponiéndose sin embargo:

"(a) Que si cualquier ganado, granos, u otra propiedad en existencia al comienzo del año contributivo hubiera sido comprada y el costo de la misma no hubiese sido cargado como gastos, solamente se consignará como ingreso para el año en que ella se venda, la diferencia entre el costo y el precio de venta;

"(b) Pero si el costo de tal propiedad hubiera sido cargado

como gasto para un año anterior, la cantidad total recibida deberá ser consignada como ingreso para el año en que se realiza la venta.

"(2) Como consecuencia de la dificultad para determinar el verdadero costo de ganado y de otros productos agrícolas, los agricultores que rinden sus planillas a base de inventario pueden valorarlos para el año contributivo corriente de acuerdo con el 'método de precio en la finca (farm price method),' que dispone el avalúo de inventarios al precio del mercado menos el costo directo de disposición. Si el utilizar el 'método de precio en la finca' de valorar inventarios para cualquier año contributivo requiere un cambio en el método de valorar inventarios utilizado en años anteriores, el inventario inicial para el año contributivo en que se verifica el cambio debe tomarse al mismo valor que el inventario de cierre para el año contributivo anterior. . . ."

El Tribunal Superior, Sala de San Juan, desestimó la querella aparentemente basándose en la ausencia de autorización del Secretario de Hacienda para el cambio de sistema de contabilidad efectuado por la contribuyente al diferir gastos incurridos y pagados en el año 1952 para el año siguiente. Dijo así: "La Ley no prescribe ningún sistema uniforme de contabilidad pero una vez usado uno debe usarse consistentemente, a menos que se haga el cambio con autorización del Secretario de Hacienda, ajustándolo a las circunstancias de cada caso. En este caso no se hizo así." Expedimos auto para revisar la sentencia recaída.

■ (1) Los agricultores pueden utilizar tres sistemas de contabilidad para preparar sus declaraciones de ingresos: (1) el sistema de recibido y pagado (cash basis); (2) el sistema de acumulación (accrual method); y, (3) el sistema de cosecha (crop basis). En el primer sistema el agricultor incluye las partidas de ingresos cuando recibe dinero efectivo o su equivalente y deduce los gastos cuando éstos son satisfechos en efectivo o su equivalente. Bajo el sistema de cosecha el cómputo del ingreso se hace, generalmente, deduciendo del

ingreso bruto obtenido al liquidar la cosecha todos los gastos ocasionados para su siembra, cultivo, recolección y venta, aun cuando éstos se hayan incurrido en un año distinto. [8]

En términos generales, bajo el sistema de acumulación se informan los ingresos y gastos cuando se incurre en los mismos, irrespectivamente de la fecha en que se reciben o se pagan. A los fines de determinar el ingreso bruto bajo el sistema de acumulación se le requiere al agricultor que utilice un inventario. El ingreso se determina mediante la suma de (1) el inventario final, (2) las cantidades recibidas por concepto de ventas durante el año contributivo; y, (3) otros ingresos misceláneos; y al resultado obtenido se le resta (1) el inventario inicial y (2) el costo de los productos comprados durante el año contributivo. Art. 76, párrafo 2do., del Reglamento de 1924; cf. Art. 22(a)-7 del Reglamento de 1954, 13 R.&R.P.R. sec. 3022(a)-7. El Art. 46 proveía que la base de valoración del inventario podía ser (1) costo y (2) costo o valor en el mercado, cualquiera que sea más bajo, y, (3) "como consecuencia de la dificultad para determinar el verdadero costo de . . . otros productos agrícolas" por el Art. 50(2), se permitió el "método de precio en la finca," que

---

[8] El Art. 76 del Reglamento Núm. 1 de la Ley de Contribuciones sobre Ingresos de 1924 disponía que "Cuando un agricultor se dedica a producir cosechas que toman más de un año desde la fecha de su siembra hasta la fecha en que se recogen o dispone de elllas, el ingreso puede ser computado a base del sistema de cosecha, pero en tal caso el costo total de producir la cosecha tiene que ser deducido en el año en que se realiza la cosecha."

El Art. 110 de dicho Reglamento disponía que "Cuando un agricultor se dedica a producir cosechas que toman más de un año desde la fecha de su siembra hasta la fecha en que se recogen y se dispone de ellas, la deducción de los gastos podrá hacerse a base del sistema de cosecha, pero en tal caso el costo total tiene que ser deducido en el año en que se realiza el ingreso de la cosecha."

Véanse los Art. 22(a)-7(c) y 23(a)-11 del Reglamento de la Ley de Contribuciones sobre Ingresos de 1954, 13 R.&R.P.R. secs. 3022(a)-7(c) y 3023(a)-11.

consiste en la valoración del inventario al precio de mercado menos el costo directo de su mercadeo o disposición. (9)

Sobre los distintos sistemas de contabilidad, y en particular de los agricultores, véanse, *Bravo* v. *Tesorero,* 76 D.P.R. 154 (1954), conf. en 220 F.2d 651 (1955); *Buscaglia* v. *Tribunal de Contribuciones,* 65 D.P.R. 353 (1945); cf. *Clínica Juliá* v. *Sec. de Hacienda,* 76 D.P.R. 509 (1954); Mertens, *Law of Federal Income Taxation* (1961), vol. 2, sec. 12.136; Maleson, *Farmers and the Federal Income and Related Taxes,* 8 Syracuse L. Rev. 145 (1957); Erbacher, *Farmers are Taxpayers, Too,* 33 Taxes 95 (1955); *Farmers and the Federal Income Tax,* 19 U. Chi. L. Rev. 522 (1952); Throckmorton, *Federal Taxation of the Farmer,* 34 Iowa L. Rev. 251, 257–266 (1949); Keaton, *Practical Farm Problems,* 22 Ind. L.J. 151, 152–153 (1947).

■ (2) Esta breve reseña nos conduce a la consideración de la necesidad de autorización o consentimiento del Secretario de Hacienda para efectuar cambios en el sistema de contabilidad adoptado por un agricultor para rendir sus declaraciones de ingresos. Antes conviene señalar que los propósitos fundamentales que se persiguen al requerir el consentimiento del Secretario para efectuar cambios en el sistema de contabilidad empleado por un contribuyente son el fomento de prácticas consistentes para asegurar la uniformidad en el cobro de las contribuciones y proteger al fisco de la pérdida de ingresos. *C.I.R.* v. *O. Liquidating Corporation,* 292 F.2d 225 (3d Cir. 1961); *Wright Contracting Co.,* 36 T.C. 620, 634 (1961). Como se dijo en *Advertisers Exchange, Inc.,* 25 T.C. 1086, 1092, 1093 (1956), confirmado en 240 F.2d 958 (2d Cir. 1957), "La consistencia [en la forma de declarar el ingreso] es la clave y se requiere irrespectivamente del método o sistema de contabilidad que se emplee. Y un cambio de un método

---

(9) Estos tres métodos se reconocen actualmente en el Art. 22(c)-6 del Reglamento de 1954, 13 R.&R.P.R. sec. 3022(c)-6. Adicionalmente, y en cuanto se refiere a ganado, se admite el método de "precio unitario de ganado."

a otro es raras veces posible sin que se cause una alteración (*distortion*) en el ingreso."

El inciso 3 del Art. 65 del Reglamento Núm. 1 de 1924 establece la regla general sobre el particular. Requiere el consentimiento del Secretario para cualquier cambio en el sistema de contabilidad utilizado para rendir las declaraciones de ingresos mediante una solicitud que debe formularse por lo menos 30 días antes de la fecha de cierre del período contributivo a que se refiere la declaración. Como es lógico suponer debe acompañarse una relación de las clases de ingresos que serán tratados de distinta manera en cada uno de los métodos y una especificación de las cantidades que serán duplicadas u omitidas como resultado del cambio propuesto. Cf. Art. 41-2 (c) del Reglamento de 1954, 13 R.&R.P.R. sec. 3041-2 (c). [10] Por excepción, cuando se trata de agricultores tal consentimiento no es indispensable para el cambio del sistema de recibido y pagado por el de inventario. El Art. 50 del Reglamento transcrito al comienzo de esta opinión corresponde literalmente a la Sec. 1616 del Reglamento Federal Núm. 65 de 1924. [11] La Corte de Contribuciones sostuvo en *Kenneth S. Battelle*, 9 T.C. 299 (1947), que fuera seguido y ratificado en *Angel Milani*, 1947 P-H T.C. Memorandum Decisions 47,280, que no era necesaria la autorización del Comisionado de Rentas Internas cuando se trata de tal cambio. Por tanto, si la actuación de la contribuyente en este caso fue un *verdadero* cambio del sistema de recibido y pagado al de inventario, el permiso del Secretario no era necesario y el fundamento aducido por el tribunal a quo para desestimar la querella no podría prevalecer.

Una lectura cuidadosa, no sólo del mencionado Art. 50, sino de otras disposiciones relacionadas con el método de

---

[10] Pueden consultarse, Tansill, *Changing Accounting Methods*, 38 Taxes 997 (1960); Edelson, *Changing Accounting Periods*, 23 Taxes 408 (1945).

[11] Sustancialmente es idéntico a las Secs. 39.22 (c) (6), 29.22 (c) (6) y 19.22 (c)-6 de los Reglamentos Federales Núms. 118, 111 y 103.

inventarios, nos convence de que no se permite a los agricultores incluir las plantaciones en pie en los inventarios empleados para determinar su ingreso tributable. La provisión invocada se refiere a "productos agrícolas [incluyendo ganado] *comprados* o *criados* por el contribuyente," y más adelante, "a cualquier ganado, granos u otra propiedad en existencia al comienzo del año contributivo [que] hubiera sido *comprada*"; el Art. 45 que trata sobre la necesidad de inventarios indica que los mismos incluirán "todos los artículos terminados o parcialmente elaborados"; y el Art. 46 sobre la valoración de inventarios, en cuanto se aplica a los agricultores, puede leerse con facilidad en cuanto a productos agrícolas desprendidos o alzados, pero difícilmente podría comprenderse si se intentara extenderlo para cubrir cosechas en pie. A igual conclusión lleva la lectura del segundo párrafo del Art. 76. La interpretación del Negociado de Rentas Internas federal es concordante con lo que hemos expuesto. En IT 1368, CB-1-1 (1922), pág. 72, se dice: "Aun cuando los agricultores pueden informar su ingreso bruto a base del sistema de acumulación (en el cual se utiliza un inventario para determinar las ganancias), no pueden incluir cosechas en pie en sus inventarios porque el volumen y valor de las cosechas existentes al comienzo y al cierre del año contributivo no puede establecerse adecuadamente. Si un agricultor se dedica a producir cosechas que toman más de un año entre la fecha en que se siembran y la de su recolección y disposición, el ingreso puede computarse a base del sistema de cosecha . . . ." Haciéndose eco de esta consulta, Paul y Mertens, en relación con disposiciones reglamentarias adoptadas bajo las leyes de contribución sobre ingresos anteriores a 1934, manifiestan concluyentemente que "A los agricultores no se les permite inventariar cosechas en pie (growing crops)." *Law of Federal Income Taxation*, vol. 1, sec. 13.39, pág. 687.

Por otro lado, las declaraciones de ingresos rendidas por la recurrente para los años 1952 y 1953 no revelan que se

intentara cambiar el sistema de recibido y pagado para adoptar el sistema de inventario pues no aparece el inventario inicial y el inventario final correspondiente a cada uno de dichos períodos. (12) Cf. OD 939, CB 4 (1921), pág. 54. La información que presentan evidencia que la contribuyente más bien intentó acogerse al sistema de cosecha; pues se refiere al "costo del cultivo" y a "gastos diferidos." Y para efectuar el cambio al sistema de cosecha necesitaba autorización. IT 2614, CB XI-I (1932), pág. 48. (13)

■ Habiendo concluido que la contribuyente no podía diferir para 1953 parte de los gastos en que incurrió y pagó en 1952 por constituir ello un cambio en el sistema de contabilidad que no fue autorizado por el Secretario de Hacienda, huelga considerar el planteamiento de que la cantidad así diferida constituía el "costo" de la cosecha en pie vendida en 1953. No podría permitirse tal duplicación.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 15 de noviembre de 1961.*

---

(12) En los casos de *Battelle* y *Milani*, supra, se cumplió con este requisito.

(13) Al discutir el cambio intentado a la luz de la venta de la finca que se estaba gestionando, expresó el representante de la contribuyente que "Si él hubiese continuado operando y no hubiera vendido, indiscutiblemente que el Tesorero tendría razón." (T.E. pág. 46.) Llama nuestra atención que la declaración de ingresos del año 1952 se radicó en 16 de marzo de 1953 y que la venta se consumó ocho días después.