## APPEAL OF GENERAL LEAD BATTERIES CO.

Docket No. 718.   Submitted May 6, 1925.   Decided September 7, 1925.

> Evidence *held* insufficient to prove the claimed value of patents transferred to the taxpayer for its capital stock upon organization.
>
> Where the Commissioner by his answer alleges an affirmative defense, the burden is upon him to prove the facts alleged.

*A. L. Hopkins, Jay C. Halls,* and *R. S. Doyle, Esqs.,* for the taxpayer.

*John D. Foley* and *J. Harry Byrne, Esqs.,* for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal is from a determination by the Commissioner of deficiencies in income and profits taxes for the years 1918 and 1919 in an amount aggregating $16,842.05.

The main question relates to the exclusion from invested capital of intangible property paid in for stock upon the organization of the taxpayer in 1914.

The answer to the amended petition admits that the net income for the year 1919 should be reduced in the amount of $3,697.97 but states " that the net reduction of the taxpayer's net income for the year 1919 should be only $727.53 inasmuch as the taxpayer has claimed among its deductions from gross income an amount of excessive depreciation in the sum of $2,970.44." No evidence was submitted as to the latter question. From the testimony and exhibits introduced at the hearing the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a Delaware corporation with its principal office located in Newark, N. J.

The taxpayer was organized in January, 1914, with authorized capital stock of $2,000,000 par value common and $500,000 par value preferred. On organization the taxpayer acquired the right, title, and interest of the General Industries Co., a New York corporation, to four United States patents which had then expired and to an application for a patent dated May 9, 1913, serial number 765091, together with all of the plant, fixtures, equipment, stock of goods on hand, researches, records, and other property and scientific data and development then held and owned by the General Industries Co., together with the good will of all of the same, for all of which the taxpayer issued all of its common stock and $75,000 par value of its preferred stock.

Production by the taxpayer did not begin until August, 1914, but in June, 1914, it caused to be published two pamphlets, both over the name of " Titan Storage Battery Co." The Titan Storage Battery Co. was one that was at some time in 1914 taken over by the taxpayer.

On December 15, 1917, the taxpayer reduced its outstanding common stock from $2,000,000 to $500,000 par value, and at the same time reduced the book value of its intangible assets from $2,000,000 to $500,000. The authorized preferred stock was reduced to $300,000 par value. The reduction was made because, in view of the experience of the taxpayer during the operations from 1914, it was believed by the taxpayer that the original capitalization was excessive.

The earnings of the taxpayer according to its books were:

| | |
|---|---|
| 1914, loss of | $24, 584. 52 |
| 1915, loss of | 6, 680. 55 |
| 1916, loss of | 2, 293. 45 |
| 1917, income of | 27, 581. 44 |

1918, income of_____ $37, 034. 15
1919, income of_____ 83, 155. 77
1920, income of_____ 101, 912. 60
1921, income of _____ 66, 924. 77

The book value of tangible assets was:

1914_____ Not in evidence.
1915_____ Not in evidence.
1916_____ Not in evidence.
1917 (Jan. 1) _____ $158, 952. 82
1918 (Jan. 1) _____ 183, 906. 76
1919 (Jan. 1) _____ 216, 374. 44
1920 (Jan. 1) _____ 389, 239. 85

Copies of the following patents were introduced in evidence:

No. 1158491, dated November 2, 1915. Application date May 2, 1913, for secondary battery element.

No. 1289354, dated December 31, 1918. Application date June 29, 1916, for storage-battery grid.

No. 1289355, dated December 31, 1918. Application date July 21, 1916, for mold for storage-battery grid.

No. 1289356, dated December 31, 1918. Application date September 5, 1916, for method of making storage-battery grids.

No. 1293419, dated February 4, 1919. Application date May 5, 1916, for storage-battery grid.

The Commissioner disallowed the inclusion of any amount in invested capital as a value for intangibles paid in for stock, and determined deficiencies for the years 1918 and 1919 in the aggregate amount of $16,842.05. The taxpayer duly appealed.

### DECISION.

The deficiencies should be computed in accordance with the following opinion. Final determination of the Board will be settled on 7 day's notice, under Rule 50.

### OPINION.

IVINS: This appeal primarily involves the question of the value of intangible assets paid in for stock upon the organization of the taxpayer. Value is always a question of fact and not of speculation. It is only provable by relevant, competent, and material evidence.

During the course of the introduction of the evidence there were references to several different companies, all of which existed prior to the organization of the taxpayer—the Baltimore Electric Storage Battery Co., the Titan Storage Battery Co., and the General Industries Co. No evidence was adduced showing the earnings of any of these companies or of the book value of their assets, tangible or intangible, prior to 1914. There was no evidence of the extent of

prior use by any of them of the patents which were transferred by the General Industries Co. to the taxpayer and no evidence as to the nature of the products made by those companies or of the use of patents in connection therewith. We have before us only the following facts: $2,000,000 par value of stock was issued for four actual patents, all of which had then expired by the running of the 17-year limitation period, one patent that had been applied for but not then issued and "researches, records and other property and scientific data and development," and good will. The taxpayer had a net loss in 1914 of $24,584.52, in 1915 a net loss of $6,680.55, in 1916 a net loss of $2,293.45, and in 1917 a net income of $27,581.44. On December 15, 1917, the taxpayer reduced its common stock from $2,000,000 to $500,000 because (to quote from the testimony) "we did not want to have any more shares outstanding than the actual value of the assets, and we felt that in view of the experience of our first four years that the original capitalization was somewhat excessive."

This evidence clearly indicates the absence of any good-will value or other intangible value in the business acquired. Subsequent earnings may corroborate an *a priori* valuation under proper circumstances. Equally, subsequent losses may carry probative force in rebuttal of a valuation which is at the best nothing but an estimate and speculation.

We must approve the determination of the Commissioner disallowing the inclusion in invested capital of any value for intangibles paid in for the common stock upon the organization of the taxpayer in 1914.

At the time of the first hearing of this appeal, January 21, 1925, the taxpayer was allowed to file an amended petition wherein it set up error by the Commissioner in improperly including in 1919 income the amount of $3,697.97. The answer thereto was filed on March 6, 1925. It was therein admitted that the taxpayer's contention as to the $3,697.97 item was correct, but it was alleged:

The Commissioner says, however, that the net reduction of the taxpayer's net income for the year 1919 should be only $727.53 inasmuch as the taxpayer has claimed among its deductions from gross income an amount of excessive depreciation in the sum of $2,970.44.

No evidence whatsoever was introduced by the Commissioner in support of this allegation, and, obviously, the burden of proof thereof is upon him. The taxpayer's income for the year 1919 as determined by the Commissioner in arriving at the deficiency should be reduced by the amount of $3,697.97.

On reference to the Board, ARUNDELL took no part in the consideration.