Emil G. Seip v. Commissioner.
Emil G. Seip v. Commissioner
Docket No. 6324.
United States Tax Court
1946 Tax Ct. Memo LEXIS 73; 5 T.C.M. (CCH) 833; T.C.M. (RIA) 46230; September 30, 1946
*73 1.In 1924 petitioner acquired $10,000 face value of bonds, due in 1943, of a silk manufacturing corporation at a cost of $10,000. Interest on these bonds was paid until in 1931 when the corporation defaulted in its interest payments and no more interest payments were made from that time up to and including the time when petitioner, in 1941, sold the bonds in a bona fide sale for $150 cash. Held, under the facts, that petitioner is entitled to take his loss in 1941, the year of sale, limited by the long-term capital loss provisions of section 117, Internal Revenue Code. 2. On the facts it is held, that the pleadings did not raise the issue of a reorganization of the corporation in 1937 and that petitioner acquired thereby a new basis of cost for his bonds much lower than their original cost. Held, further, that even if it be assumed that such an issue was properly raised by the pleadings and that the Commissioner has proved the facts attending such a reorganization, and that it be further assumed, as the Commissioner apparently contends, that petitioner constructively received new bonds and common stock of the new corporation in exchange for his old bonds, *74 nevertheless, his old basis of cost remains the same under section 113 (a) (6), Internal Revenue Code, because he had neither claimed nor been allowed any loss in 1937 or any other year resulting from any exchange in the reorganization of his old bonds for such new securities. Bertha A. Henry, 7 T.C. 228, followed. John Moore Robinson, Esq., and Ralph W. Smith, Esq., 650 S. Spring St., Los Angeles, Calif., for the petitioner. Byron M. Coon, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income *75 tax for the year 1941 of $1,000.84. The deficiency is due to one adjustment which the Commissioner has made in the net income of petitioner as reported by him in his income tax return for the taxable year. That adjustment was as follows: "Long-term capital loss disallowed $4,812.50." The Commissioner explained his adjustment in the deficiency notice as follows: The loss from the sale of $10,000.00 face value of Phoenix Silk Manufacturing Company First Mortgage Bonds in the taxable year for $150.00 is held to have resulted in a loss in the taxable year of only $225.00, or a long-term capital loss of $112.50, in lieu of the long-term capital loss of $4,925.00 claimed from such sale in your return. Accordingly the loss deduction claimed is disallowed to the extent of $4,812.50. The petitioner in contesting the foregoing adjustment alleged error as follows: (a) The respondent erred in his failure to allow as a long term capital loss the loss sustained in the taxable year by Petitioner in the total sum of $9850.00 through the sale in the taxable year of ten $1000.00 par value bonds of Phoenix Silk Mfg. Co., Inc., and to allow Petitioner to deduct one-half thereof to wit $4925.00 *76 from his net income for said year. The facts upon which the petitioner relied in support of the foregoing assignment of error were stated in the petition as follows: (a) In the year 1929 petitioner acquired ten $1000.00 par value bonds of the Phoenix Silk Mfg. Co., Inc., for a total consideration of $10,000.00 paid in said year of acquisition by Petitioner. Petitioner sold these identical bonds on or about the 12th day of November, 1941, to Adams-Chadwick Company, of 650 South Spring Street, Los Angeles, California, for a total consideration of $150.00. Said sum of $150.00 constitutes the total return of principal of said bonds at any time received by Petitioner. At all times between the date of acquisition by petitioner of said bonds and the date of sale by petitioner thereof, said bonds had a saleable market value. Respondent's answer was a general denial of both petitioner's assignment of error and the facts alleged in support thereof. Respondent's answer contained no statement of any facts upon which he relied for defense or for affirmative relief. Findings of Fact Petitioner resides in Van Nuys, California. Petitioner's income tax return for the year ending December 31, 1941 was *77 filed with the Collector for the Sixth District of California. In the year 1924 petitioner acquired $10,000 par value 20-year first mortgage 7s, due 1943, bonds of Phoenix Silk Mfg. Co., Inc., sometimes hereafter referred to as Phoenix, for a total consideration of $10,000 paid therefor by petitioner in said year. On November 12, 1941, petitioner sold these identical bonds to Adams-Chadwick Company of 650 South Spring Street, Los Angeles, California, for a total consideration of $150 from which was deducted $5.00 for revenue tax. Said sum of $145 net, received by petitioner from the sale of the bonds constitutes the total return of principal of these bonds at any time received by petitioner. These bonds were continually held by petitioner from the date of acquisition thereof to the date of sale. Petitioner was president of the Calumet National Bank of Chicago in 1924 and bought the bonds through the bank. Petitioner received interest regularly up [*] February 1931. When, thereafter, the in terest coupons were returned "he looked into the matter and was told that they (Phoenix) could not pay their interest." He also made inquiry in 1932, talking to brokers and different people *78 about it. He made inquiries probably as often as once a year. Some years he was able to find quotations on the bonds and in others was unable to locate any quotations. He was president of the Calumet National Bank until 1930. After his retirement from the bank he went to South America for a while. After his return to the United States he moved to California where he has since resided. There were quotations of bids and offers in the over-the-counter market published in the National Quotation Bureau, Incorporated, of Phoenix Silk Manufacturing Company, Inc. bonds of the issue same as those owned by petitioner during the years 1937 to 1941, as follows: For 1937 there was a range of a $19 high offer and a low bid of $10 for the bonds; the high offer in 1938 was $11 and the low bid was $2.00; in 1939 the higher offer was $7.00 and the low bid $1.00; in 1940 the higher offer was $3.00 and the low bid was $1.00; there was no record of an offer in 1941 but there is record of a bid of $1.50 in that year. The foregoing offers and bids had reference to $100 face value of bonds. Petitioner had not endeavored to take any loss or deduction on these bonds in any prior year because he had been *79 advised that he could not take any deduction until he actually sold the bonds, and he believed that this was the law. The sale which he made of the bonds in 1941 for a net amount of $145 was an actual bona fide sale and he received that amount in cash for the bonds. Moody's Manual of Investments, Industrials, 1938 - (pp. 1231-1232) shows in part, with reference to Phoenix, as follows: PHOENIX SILK MANUFACTURING CO., INC.: Incorporated under New Jersey laws in Jan., 1923, as successor to Phoenix Silk Mfg. Co., incorporated in New Jersey in 1824. Operates a silk weaving mill at Allentown, Pa., for broad silks, a throwing plant at Pottsville, Pa., having an annual capacity of 6,000,000 yards of finished product. Machinery includes approximately 1,200 broad looms and 43,000 throwing spindles. Manufactures and sells a variety of broad silks, tailors' linings and tie silks. Number of employees, Apr. 1, 1936, 350. Reorganization Petition: Company filed voluntary petition in bankruptcy seeking to reorganize under section 77-B of Bankruptcy Act on Aug. 13, 1934. E. W. Walters was appointed trustee. Amended Plan of Reorganization: An amended plan of reorganization dated Oct. 7, 1937 was *80 confirmed by the court, Nov. 12, 1937. The plan as amended provides for the formation of a new company capitalized as follows: $150,000 5% 1st and 2nd mortgage 5-year RFC loan; $30,000 5% 1st mortgage to Miners' National Bank, Pottsville, Pa.; $20,000 5% 2nd and 3rd mortgage loan to a group; $418,600 30-year income debentures, contingent cumulative 5s, during first three years, and cumulative 5s. thereafter, due Jan. 1, 1968; and 40,708 shares $1 par common capital stock. The plan makes no provision for existing preferred and common stockholders, the company being insolvent. The claims receiving treatment under the plan would do so upon the basis of the principal amount involved, no provision being made for any unpaid or accrued interest thereon, as follows: In respect of $837,200 principal amount of 20-year 1st mortgage 7s, due 1943; For each $100 principal amount, $50 principal amount of 30-year income debentures and 3 shares of capital stock. In respect of $360,016 principal amount serial notes 6s: For each $50 principal amount one share of capital stock. In respect of $22,752 unsecured claims: For each $50 principal amount of allowed claims one share of capital stock. *81 Claims of less than $100 and that portion of any claim which exceeds any multiple of $50 would be paid in cash at the rate of 10 cents on the dollar. Preferred creditors with claims amounting to $1,527 would receive their claims in cash in full. Opinion BLACK, Judge: Respondent no longer disputes that petitioner acquired the bonds in question in 1924 at a cost to him of $10,000 and sold them in 1941 for $145 net. We may also add that the petitioner has clearly established the foregoing facts to be true by evidence at the hearing. Respondent contends, however, that petitioner is not entitled to any more deduction on account of the sale of the bonds in 1941 he has determined in his deficiency notice. The reason for this, respondent argues in his brief, is that in 1937 Phoenix was reorganized under section 77B of the National Bankruptcy Act; that it was not a tax-free reorganization; that thereafter petitioner's adjusted basis for his bonds was only a small fraction of what it was prior to the reorganization; and that any loss which petitioner incurred when he sold his bonds in 1941 is limited to his adjusted basis less the amount received for them, applying also the capital loss *82 provisions of the statute. Says respondent in his brief: Market quotations nearest to the date of reorganization showed a value of the entire amount of debentures and stock to which petitioner was entitled, as follows: $5,000 par income debentures, market
value
$375.00
300 shares common stock
30.00
Total market value
$405.00
In this connection we may point out that we have no evidence in the record of the market value of the new securities of Phoenix issued in the reorganization, of which respondent speaks in his brief. It is also pertinent to point out that in the statement which accompanied respondent's deficiency notice he made no determination that there had been a taxable reorganization of Phoenix in 1937 resulting in an adjusted basis for petitioner's bonds.respondent does not say anything in his deficiency notice, nor in the statement which accompanied it, about any reorganization of Phoenix. In this deficiency notice he recognizes the validity of the sale of the bonds which petitioner made in 1941, but reduces the loss which petitioner had claimed from $9,850, $4,925 of which petitioner had taken into account, to $225, of which $112.50 was to be taken *83 into account. Respondent made no statement as to why this reduction in petitioner's loss was made. No evidence was offered by respondent at the hearing which in any way explains it. The petitioner, in assigning error as to the Commissioner's determination of the deficiency, alleges that the Commissioner erred in his reduction of the capital loss claimed on petitioner's return from $4,925 to $112.50. In support of this assignment of error, petitioner alleged facts which in substance were that the bonds had a cost basis to him of $10,000; that he had owned and held them since 1929, and that he sold them in 1941 for a total consideration of $150. To this allegation of error and these allegations of fact, the Commissioner filed a general denial. He made no affirmative allegations in his answer that there had been a reorganization of Phoenix in 1937 by which petitioner acquired a new basis of $405, or any figure thereabout, for his bonds to take the place of his old basis of $10,000. It is petitioner's contention that the pleadings raise no issue of any reorganization nor of any new basis acquired thereby by petitioner for his bonds. He, therefore, contends that there was no burden of *84 proof on him to show that there was a reorganization of Phoenix, or whether it was a taxable or a nontaxable reorganization. Petitioner contends that where the Commissioner relies upon new matter he must allege and prove it and cites General Lead Batteries Co., 2 B.T.A. 392; Morris Michel, 43 B.T.A. 1036. We think these authorities support petitioner's contention. At the hearing of this proceeding the Commissioner was permitted, over the objections of petitioner, to introduce in evidence certain statements contained in Moody's Manual of Investments concerning a reorganization of Phoenix in 1937. If it be assumed that the Court acted correctly in admitting this evidence, it seems to us that it must be limited to showing that a reorganization of Phoenix actually took place in 1937. It cannot be taken as proof of the detailed facts connected with such reorganization. We think the detailed facts connected with such a reorganization cannot be proved, over the objections of the taxpayer, by the introduction of statements contained in publications like Moody's Manual of Investments. Such proof would have to be by court records and evidence of that kind. Therefore, *85 in the consideration of this phase of the case we consider the statements from Moody's Manual of Investments as only proving that a reorganization of Phoenix took place in 1937 and not as proving the detailed facts connected with such reorganization. Also, we point out that petitioner has clearly proved that he did not participate in such reorganization. He had never exchanged his old bonds for new bonds and common stock of the new corporation. He knew nothing about any reorganization taking place until after respondent had made determination of his deficiency. Therefore, we fail to see where petitioner has acquired any new basis for his bonds, even if it be assumed that respondent has properly proved the facts connected with the reorganization. Of course, if, following the reorganization in 1937, the bonds became entirely worthless in some year prior to 1941, we do not think petitioner could take his loss by a sale in 1941 of the bonds for a fraction of their face value. However, petitioner has proved that there were quoted prices on these bonds from 1937 down to 1941. These bids and offers are shown in our findings of fact. Therefore, we think when petitioner sold his bonds in 1941 *86 for $150 in what clearly appears to have been a bona fide sale, he is entitled to take his loss, limited of course by the capital loss provisions of the statute. Both parties agree that whatever loss petitioner sustained in the sale is a long-term capital loss as defined in section 117 (a) (5), I.R.C. What petitioner sold in 1941 were the identical bonds which he had purchased in 1924 at their face value of $10,000 and, so far as we can see, he still had a basis of their original cost under section 113 (a), I.R.C.
Even if we are wrong in concluding that petitioner had not acquired, in the reorganization of Phoenix, a new basis of cost for his bonds because he did not participate in it, and if it be assumed, as respondent seems to argue in his brief, that petitioner constructively received in exchange for his old bonds, the new bonds of Phoenix of a par value of $50 each, plus his pro rata share of the new common stock of Phoenix and thereby acquired a new basis for his bonds aggregating $405 as respondent has figured in his brief nevertheless the decision would still have to be in favor of petitioner. In Bertha A. Henry, 7 T.C. 228, *87 (promulgated June 26, 1946) the facts were these: Petitioner in 1925 purchased $5,000 bonds in corporation A at par. Interest payments on the bonds were defaulted in 1929 and a bondholders' committee was formed. Petitioner deposited her bonds with the committee. In 1935 she determined the bonds to be worthless, wrote them off, and in her income tax return for that year claimed a bad debt loss of $5,000, which loss was subsequently disallowed by the respondent. In 1936 proceedings under section 77B of the Bankruptcy Act were instituted against A and, under a plan of reorganization approved by the court having jurisdiction of the proceedings, corporation C was organized to take over the assets of A. Pursuant to the plan, petitioner received $500 of bonds and 10 shares of no par common stock in C in exchange for her $5,000 bonds in A. She claimed no loss deduction in connection with the bonds in her 1936 return, but upon later audit of the return she requested that she be allowed a bad debt loss of $4,500, the difference between the face value of the old bonds and the face value of the new bonds, since it had not been allowed for 1935. The deduction, however, was disallowed and a deficiency *88 for 1936 accordingly was determined and subsequently assessed and paid. In 1941 C redeemed petitioner's bonds at par and in that year petitioner also disposed of the 10 shares of stock for a consideration of $99. On these facts we held that no loss on the bonds was in fact recognized in the final determination of petitioner's tax for 1936, and under section 112 (1) (2) (A) of the Internal Revenue Code, as added by section 121 of the Revenue Act of 1943, retroactively to include the taxable year, no loss is to be recognized on the 1936 exchange. The taxpayer in that case was therefore entitled to use a carry-over basis from the old bonds to the new and to deduct the claimed longterm capital loss in 1941. We so held. In speaking of the purpose of the amended statute added by section 121 of the Revenue Act of 1943, we said: The purpose of Congress in adopting the amendments effected by section 121 of the Revenue Act of 1943, we think, is made clear in the committee reports. Congress sought to settle the confusion existing with respect to the tax consequences of, and to make uniform the tax treatment of, insolvency reorganizations, with regard not only to the *89 corporation or corporations, but also with regard to the participating shareholders and creditors. And, since insolvency reorganizations and exchanges in connection therewith occurring in earlier years would have their effect on the determination of basis and other questions in later years when, for example, securities acquired in the exchange might be disposed of, Congress deemed it wise to make the amendments retroactive, with certain qualifications. Obviously, however, in so doing Congress did not intend to allow a security holder who had taken a tax deduction for loss on account of such an exchange in an earlier year, now closed, to obtain in effect a double deduction upon the disposition of the new securities in a later year, by virtue of using a carried over basis. So, the net effect in such cases was to leave both the taxpayer and the Commissioner in the position in which they had placed themselves. Therefore, if it be assumed that in the reorganization of Phoenix which took place in 1937 under section 77B of the Bankruptcy Act, as respondent apparently contends, petitioner constructively exchanged his old bonds for the new bonds and common stock which at the time of exchange *90 had fair market value of around $405, nevertheless petitioner still retains the old basis of his bonds for computation of his gain or loss on the sale in 1941, because in 1937, the year of reorganization, he did not claim and was not allowed any loss on these bonds in the computation of his income tax liability, and that year is now closed. Petitioner testified that he had not claimed a loss in 1937 or any other year on account of the bonds because he believed and had been advised that he could not take any loss until he had actually sold the bonds and his loss had been definitely fixed thereby. The fact that petitioner has proved that he has not taken any loss deduction on his income tax return for 1937 or any other year by reason of these bonds, seems to bring him within the ambit of Bertha A. Henry, supra, even if it be assumed that the facts of the reorganization of Phoenix have been proved and that petitioner constructively exchanged his old bonds for the new bonds and common stock of the reorganized corporation. Under such an assumed state of facts, petitioner's basis under section 113 (a) (6), Internal Revenue Code, would be the same "as the *91 basis of the securities surrendered, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized under the law applicable to the year in which the exchange was made." Decision will be entered for the petitioner.