Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| RUBEN MARTINEZ RIVERA<br><br>Recurrente<br><br>v.<br><br>CONSEJO DE TITULARES COND OCEAN POINT, representado por MARIA PADILLA MAYRA ZAMORA<br><br>Recurridos | KLRA202300532 | *REVISIÓN ADMINISTRATIVA* Procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: C-SAN-2022010588<br><br>Sobre: Condominios |
|---|---|---|

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Aldebol Mora y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2024.

Comparece el recurrente, Rubén Martínez Rivera ("recurrente" o "señor Martínez") mediante recurso de revisión administrativa y nos solicita la revisión de la *Resolución* emitida y notificada el 10 de agosto de 2023 por el Departamento de Asuntos del Consumidor ("recurridos" o "DACo"), con relación a la querella número C-SAN-20220010588. Mediante esta, el DACo ordenó la desestimación de la querella de epígrafe, por academicidad.

## I.

Conforme surge del expediente de autos, el señor Martínez es el titular del apartamento 3902 del Condominio Ocean Point, el cual está sometido al régimen de Propiedad Horizontal.

El 23 de noviembre de 2021, el señor Martínez presentó una *Querella* ante el DACo en la que solicitó como remedio una orden de Cese y Desista contra el Consejo de Titulares del Condominio Ocean Point ("Consejo de Titulares") para que se abstengan de ordenar la demolición de una estructura en construcción que mantiene en la

terraza de su apartamento. Alegó, además, que el Consejo de Titulares obvió la evidencia de que otros titulares habían realizado construcciones similares. De otro lado, el señor Martínez solicitó autorización para que su empleado continuara sus labores de construcción y, a su vez, solicitó la convocación de una Asamblea con la finalidad de dilucidar el tipo de construcción permitida.

El 10 de junio de 2022, el Consejo de Titulares presentó su Contestación a Querella mediante la cual negó que existieran otras construcciones simulares en el Condominio Ocean Point.

El 3 de julio de 2022, el Presidente de la Junta de Directores, el señor Neftalí Soto, circuló una comunicación dirigida a toda la comunidad del Condominio Ocean Point en la cual informó que se estaba gestionando la celebración de una Asamblea Ordinaria y, además, puntualizó que allí se discutiría si el señor Martínez podría continuar con la realización de una obra sin permiso y fuera del reglamento. De igual forma, en la comunicación se argumenta que el señor Martínez entorpece y obstaculiza las decisiones tomadas por las Asambleas Extraordinarias previas.

Así las cosas, el 11 de agosto de 2022, la Junta de Directores convocó la Asamblea del Consejo de Titulares a celebrarse el 27 de agosto de 2022 y en la agenda se señaló en el inciso número siete (7) el asunto sobre *"Aprobación cambio de fachada y ampliación terraza apto. 3903- Sr. Rubén Martínez".* Véase, anejo 2 del Apéndice del Recurso de Revisión.

Finalmente, el 27 de agosto de 2022, el Consejo de Titulares se reunió en Asamblea Ordinaria, a la cual asistió el señor Martínez. Consta en la Minuta de la referida Asamblea que se discutió el asunto del señor Martínez y se decidió, mediante 35 votos a favor y 9 en contra, que tiene que modificar su estructura de acuerdo con el plano aprobado.

Por otro lado, el 11 de noviembre de 2022, el Consejo de Titulares radicó una *Moción de Desestimación* ante el DACo alegando academicidad debido a que el señor Martínez no impugnó la determinación de la Asamblea ni durante su celebración ni posteriormente mediante enmienda a la Querella.

En desacuerdo, el 29 de noviembre de 2022, el señor Martínez presentó su *Réplica a Moción de Desestimación y Solicitud de Inspección Ocular* donde argumentó que la asamblea ordinaria no atendió los asuntos impuestos en la querella.

Así, el 30 de enero de 2023, el señor Martínez presentó una Moción sometiendo Prueba Documental donde anejó varias fotografías de construcciones existentes en el Condominio Ocean Point.

El 1 de febrero de 2023, el DACo celebró la vista administrativa por videoconferencia. Durante la vista, el señor Martínez testificó e identificó las referidas fotografías. Por su parte, el Consejo de Titulares, sin contrainterrogar al señor Martínez, levantó un planteamiento de derecho en el cual reiteró sus argumentos a través de la *Moción de Desestimación* presentada previamente. Luego de varias argumentaciones de ambas partes, el DACo ordenó la desestimación de la querella de epígrafe, por academicidad.

Oficialmente, el 10 de agosto de 2023, el DACo emitió y notificó, en la misma fecha, la *Resolución* declarando *Ha Lugar* la *Moción de Desestimación* presentada por el Consejo de Titulares.

Inconforme, el 30 de agosto de 2023, el señor Martínez presentó una *Moción de Reconsideración* la cual, sin respuesta de DACo, se entiende que fue rechazada de plano.

Aun inconforme, el 16 de octubre de 2023, el señor Martínez acede ante nosotros mediante *Recurso de Revisión Judicial*. Mediante este, adujo que el DACo cometió los siguientes errores:

1. *Erró el Honorable Departamento De Asuntos del Consumidor al concluir la vista administrativa con solamente el testimonio del querellante, limitándole su derecho a contrainterrogar a los testigos de la parte querellada, en violación al debido proceso de ley.*

2. *Erró el Honorable Departamento de Asuntos del Consumidor al concluir que la reclamación hecha por el querellante ante la agencia resultaba académica al no impugnar una asamblea celebrada por el Consejo de Titulares con posterioridad a la reclamación.*

3. *Erró el Honorable Departamento de Asuntos del Consumidor al no conformar las determinaciones de hecho con la evidencia presentada ante su consideración.*

Así las cosas, el 16 de octubre de 2023, el recurrente presentó *Moción sobre Prueba Testifical.*

A esos efectos, el 19 de octubre de 2023, emitimos una *Resolución* concediendo términos a las partes para presentar sus correspondientes Alegatos Suplementarios.

En cumplimiento, el 9 de noviembre de 2023, el recurrente presentó la *Transcripción Literal de Vista Virtual Celebrada el 1 de febrero de 2023.*

En consecuencia, el 11 diciembre de 2023, el recurrente presentó su *Alegato Suplementario.*

De igual forma, el 3 de enero de 2024, los recurridos presentaron su *Alegato en Oposición a la petición y al Alegato Suplementario.* Mediante el cual alegaron que la asamblea ordinaria atendió todas las solicitudes de remedio que presentó el señor Martínez ante el DACo y, por ende, de querer impugnar los acuerdos y las determinaciones del Consejo de Titulares, le aplicaba el articulo 65(b) de la Ley Núm. 129-2020, conocida como la Ley de Condominios de Puerto Rico, 31 LPRA § 1921 et seq., ("Ley de Condominios").

Con el beneficio de la comparecencia escrita de ambas partes y la transcripción de la prueba testifical, damos estos por perfeccionados y procedemos a resolver.

**II.**

**A. La revisión judicial y la doctrina de la deferencia judicial**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* 2023 TSPR 6, resuelto el 20 de enero de 2023. Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente,* 201 DPR 26 (2018). Por ende, "los tribunales

deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde*, supra. Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* supra.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**B. Debido proceso de ley en procedimiento administrativo**

El debido proceso de ley es un derecho fundamental reconocido tanto en nuestra Constitución como en la Constitución Federal. Artículo II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emda. V y XIV, Const. EE.UU. Dicha garantía opera en dos dimensiones distintas, a saber, la sustantiva y la procesal. *ELA et al. v. Molina Figueroa,* 186 DPR 461 (2012). El debido proceso de ley sustantivo pretende proteger y salvaguardar los derechos fundamentales de las personas al requerirle al Estado justificación al intervenir con los mismos. Por otro lado, en su vertiente procesal el debido proceso de ley busca garantizar que la interferencia con los intereses de libertad o propiedad de las personas se lleve a cabo a través de un procedimiento que sea imparcial y justo.

Nuestra jurisprudencia ha establecido varios requisitos que todo procedimiento adversativo debe cumplir para satisfacer las exigencias mínimas del debido proceso de ley, a saber: que las partes sean notificadas adecuadamente del proceso; que las partes tengan la oportunidad de ser oídos; que el proceso se lleve a cabo ante un juzgador imparcial; que las partes tengan derecho a contrainterrogar a los testigos y a examinar la evidencia presentada en su contra; que la decisión se base en evidencia presentada y admitida en juicio y que las partes tengan derecho a tener asistencia de abogado. *Hernández v. Secretario,* 164 DPR 390 (2005); *Rivera Rodríguez v. Lee Stowell,* 133 DPR 881 (1993).

En el ámbito administrativo, el procedimiento exigido, además de satisfacer las exigencias mínimas del debido proceso de ley, requiere una decisión administrativa informada, con conocimiento y comprensión de la evidencia, basada en el expediente y sustentada con determinaciones de hechos y conclusiones de derecho. *Calderón v. CFSE*, 181 DPR 386, 399 (2011); *Domínguez Castro et al. v. ELA I*, 178 DPR 1, 47 (2010). Lo vital es que el proceso respete la dignidad de los ciudadanos afectados contra la arbitrariedad administrativa, de manera que la persona afectada pueda cuestionar las razones y la legalidad de la acción. *Picorelli v. Departamento de Hacienda*, 179 DPR 720, 736 (2010).

Además, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en su sección 3.1, 3 LPRA sec. 9641 (en adelante LPAU), dispone que en un procedimiento adjudicativo formal ante una agencia las personas tienen garantizados los siguientes derechos: (1) ser notificado oportunamente de los cargos o querellas o reclamos en contra de una parte; (2) presentar evidencia; (3) una adjudicación imparcial; y (4) que la decisión sea basada en el expediente. Cónsono con lo anterior, la sección 3.13 (b) de la LPAU, 3 LPRA sec. 9653(b) establece que:

> "El funcionario que presida la vista dentro de un marzo de relativa informalidad ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación, excepto según haya sido restringida o limitada por las estipulaciones en la conferencia con antelación a la vista."

Asimismo, la Sección 3.18 de la LPAU, 3 LPRA sec. 9658, reitera que la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y en la revisión judicial es el expediente administrativo.

**C. Principio de justiciabilidad: Academicidad**

El principio de la justiciabilidad recoge una serie de doctrinas de autolimitación basadas en consideraciones prudenciales que prohíben emitir decisiones en casos que realmente no existen o dictar una sentencia que no tendrá efectos prácticos sobre una controversia. *Moreno Orama v. UPR*, 178 DPR 969, 973 (2010); *Com. de la Mujer v. Srio. de Justicia*, 108 DPR 715, 720 (1980); *ELA v. Aguayo*, 89 DPR 552, 595 (1958). A tales efectos, el poder de revisión judicial únicamente puede ejercerse en un asunto que presente un caso o controversia, y no en aquellas circunstancias en que se presente una disputa abstracta, cuya solución no tendrá consecuencias para las partes. *ELA v. Aguayo, supra,* págs. 558-59.

En ese contexto, un asunto no es justiciable cuando (i) se trata de resolver una cuestión política; (ii) una de las partes carece de legitimación activa para promover un pleito; (iii) después de comenzado el litigio hechos posteriores lo tornan en académico; (iv) las partes pretenden obtener una opinión consultiva o, (v) cuando se pretende promover un pleito que no está maduro. *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Crespo v. Cintrón,* 159 DPR 290, 298 (2003); *ELA v. Aguayo, supra,* pág. 584.

Como se observa, una instancia en la que un caso no es justiciable se suscita cuando la controversia se torna académica. *Íd.* En esencia, se sostiene que un caso es académico cuando se intenta obtener: (1) un fallo sobre una controversia disfrazada, que en realidad no existe, (2) una determinación de un derecho, antes de que haya sido reclamado y (3) una sentencia sobre un asunto que al dictarse no podrá tener efectos prácticos sobre una controversia existente. *Íd, San Gerónimo Caribe Project v. ARPe*, 174 DPR 640, 652 (2008). Es decir, que una controversia puede convertirse en académica cuando "su condición viva cesa por el transcurso del tiempo. *UPR v. Laborde Torres*, 180 DPR 253, 280 (2010).

No obstante, nuestro más Alto Foro a reconocido excepciones a la doctrina de academicidad, a saber: (1) una cuestión recurrente o susceptible de volver a ocurrir; (2) cuando la situación de hechos ha sido cambiada por el demandado, pero no tiene visos de permanencia; (3) cuando subsisten consecuencias colaterales que tienen vigencia y actualidad. Íd, pág. 281.

Conforme a lo anterior, cuando un Tribunal atiende un planteamiento de academicidad, nuestro ordenamiento le impone la obligación de desestimar el recurso si de los hechos o del derecho aplicable surge que las circunstancias han variado de tal forma, que no existe una controversia vigente entre partes adversas que amerite su intervención. *Moreno Orama v. UPR, supra*, pág. 973.

**D. Ley de Condominios de Puerto Rico**

La Ley de Condominios, *supra,* tiene el propósito de viabilizar la propiedad individual sobre un apartamiento, que forma parte de un edificio o inmueble sometido al régimen de propiedad horizontal. En virtud del Artículo 65 de la Ley de Condominios, *supra*, los titulares pueden impugnar ante el DACO acuerdos, omisiones, o actuaciones de la junta de directores, del administrador interino, del presidente y del secretario, concernientes a la administración del inmueble, cuando estos le sean perjudiciales al titular. 31 LPRA sec. 1923j. Además, el mencionado Artículo 65 dispone lo siguiente:

> Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos:
>
>> (a) Cuando sean contrarios a este capítulo, la escritura matriz y reglamento del condominio;
>>
>> **(b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;**
>>
>> (c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.

En el caso de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador.

**Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.**

En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de este capítulo, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años. El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de este capítulo.

Artículo 65 de la Ley Núm. 129-2020, 31 LPRA sec. 1923j. (Énfasis nuestro).

En *Consejo de Titulares v. Gómez Estremera*, 184 DPR 407 (2012), nuestro Tribunal Supremo manifestó que el término para impugnar una determinación al amparo del ahora Artículo 65 de la Ley de Condominios dependerá de dos factores. El primero de dichos factores es contra quién se dirige la acción y, el segundo, el fundamento de la impugnación. *Íd.*, pág. 422. En este sentido, si se impugnan los acuerdos, acciones u omisiones de la Junta de Directores o el Consejo de Titulares alegándose que estos han violado la Ley de Condominios, el Reglamento de la comunidad o la escritura matriz, el término será de dos años, según dispone el ahora Articulo 65(a). *Íd.*, pág. 422. En cambio, si lo que se impugna son los acuerdos y determinaciones del Consejo Titular porque a juicio del titular estas son gravemente perjudiciales para él, el término será de 30 días, según dispone el ahora Articulo 65(b). *Íd.*, pág. 422.

**E. Reglamento de Procedimientos Adjudicativo del DACo**

La Ley Núm. 38-2017 conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, según enmendada, 3 LPRA sec. 9642 (en adelante LPAU), dispone en su sección 3.2 que "[t]oda agencia deberá adoptar un reglamento para regular sus procedimientos de adjudicación.

A esos efectos, el Reglamento Núm. 8034 de 14 de junio de 2011, rige lo concerniente a los procedimientos adjudicativos que sean traídos ante la consideración del DACo al amparo de las leyes y reglamentos que administra. Dicha reglamentación establece en su Regla 26 que:

26.1
La resolución de la querella en sus méritos contendrá una relación de la determinación de hechos probados, la cual se ajustará y tendrá apoyo en el expediente del procedimiento, conclusiones de derecho, y dispondrá lo que en Derecho proceda para su ejecución mediante una orden e incluirá los apercibimientos para solicitar revisión judicial."

26.2
El funcionario, Secretario o Panel de Jueces que presida la vista podrá conceder a las partes un término no mayor de siete (7) días laborables después de concluir la misma, para la presentación de propuestas sobre determinaciones de hechos y conclusiones de derecho por escrito. Cuando las partes tengan los recursos disponibles podrán solicitar presentarlas por correo electrónico o digitalizado en el sistema operativo compatible con el utilizado por el Departamento.

**III.**

En el caso de autos, el recurrente imputó al DACo tres señalamientos de error. Por no estar relacionados, los atenderemos de manera individual. En síntesis, el recurrente en su primer señalamiento de error argumenta que se le violó su debido proceso de ley al no permitirle contrainterrogar a los testigos de los recurridos. No tiene razón. Veamos.

Es pertinente mencionar que en la vista administrativa celebrada el 1 de febrero de 2023 por el DACo únicamente se desfiló prueba por parte del recurrente. Específicamente, se presentó al

señor Martínez como único testigo, quien declaró a su favor e identificó todas las fotografías del expediente administrativo. Durante la referida vista, los recurridos no presentaron prueba en contra del señor Martínez, sino que optaron por levantar un planteamiento de derecho. Tal planteamiento de derecho fue atendido por el Juez Administrador del procedimiento, el cual provocó la desestimación de la querella.

Por lo tanto, el recurrente no se le privó de contrainterrogar ni examinar la evidencia presentada en su contra, toda vez que esta no fue presentada.

Tras examinar la totalidad del expediente de autos y la transcripción de la prueba testifical, resulta evidente que el DACo salvaguardó el debido proceso de ley del recurrente. Puesto que este recibió notificación adecuada del proceso, tuvo oportunidad de ser oído y tener asistencia de abogado, a presentar prueba a su favor y a recibir una decisión basada en el expediente. Ante esto, es forzoso concluir que el DACo no incurrió en una violación al debido proceso de ley contra el recurrente.

Con relación al segundo señalamiento de error, el recurrente argumenta, en síntesis, que erró el DACo al desestimar la querella por alegada acadecimidad. No tiene razón. Veamos.

Surge del expediente que el 23 de noviembre de 2021, el señor Martínez presentó una querella ante el DACo solicitando, en lo aquí pertinente, la convocación de una asamblea con la finalidad de dilucidar el tipo de construcción permitida en el Condominio Ocean Point. Por ello, el 27 de agosto de 2022, el Consejo de Titulares celebró una Asamblea Ordinaria, a la cual asistió el señor Martínez. Además, consta en la Minuta de la referida Asamblea que se discutió y se decidió, mediante 35 votos a favor y 9 en contra, que el recurrente debía modificar su estructura por no cumplir con el plano del mencionado condominio.

En consecuencia, los recurridos presentaron una Moción de Desestimación alegando academicidad debido a que el remedio solicitado en la Querella por el señor Martínez fue atendido en la Asamblea Ordinaria y, este no fue impugnado en ningún momento. Estamos de acuerdo con el planteamiento de los recurridos.

Según mencionamos en el derecho aplicable, el titular de un apartamiento bajo el régimen de propiedad horizontal que esté inconforme con algún acuerdo o determinaciones del Consejo de Titulares, porque a su juicio son perjudiciales para él, tiene el término de 30 días para impugnarlo. 31 LPRA sec. 1923j.

Ante tal escenario, el recurrente tenía la opción de objetar o impugnar el proceso de la Asamblea, en el cual tuvo el beneficio de estar presente personalmente, o de presentar una enmienda a la Querella, vigente en aquel momento, ante el DACo dentro de 30 días. Sin embargo, en el expediente de autos no surge que el recurrente haya impugnado los asuntos atendidos durante la celebración de la referida Asamblea Ordinaria de ninguna manera.

A tales efectos, concluimos que quedó resuelto el remedio solicitado del recurrente. No existiendo alguna de las excepciones contempladas en el derecho antes expuesto, el caso ante nos se tornó académico.

Por último, atendemos el tercer señalamiento de error. En síntesis, el recurrente argumenta que la *Resolución* emitida por el DACo no contiene una determinación de hechos detallada. No tiene razón. Veamos.

Tal cual expresamos en el ápice II, el Reglamento de Procedimientos Adjudicativos del DACo requiere que las resoluciones contengan: (1) determinaciones de hechos probados y apoyados por el expediente, (2) conclusiones de derecho y (3) apercibimiento para solicitar revisión judicial. Nos resulta importante hacer hincapié en que el mencionado reglamento no

exige que las determinaciones de hechos sean detalladas, sino que contengan todo aquello que en base al expediente fue probado durante el procedimiento administrativo.

Además, recordemos que, en el ejercicio de nuestra jurisdicción revisora, le damos deferencia a las determinaciones de hechos que formulan los foros administrativos, siempre que encuentran apoyo en el expediente administrativo, y satisfagan el estándar de prueba aplicable, es decir, el de evidencia sustancial. Igualmente, en materia de apreciación de la prueba, debemos deferencia a las determinaciones que realizan dichos organismos. Ello, pues gozan de una presunción de legalidad y corrección, que se basa en la experiencia y pericia que se presume dichos organismos poseen. Dicha presunción, de ordinario, prevalecerá, a menos que la parte recurrente demuestre evidencia suficiente que rebata dicha presunción.

Así que, luego de evaluar la referida *Resolución* y consonó con lo anterior, concluimos que esta contiene siete determinaciones de hechos, conclusiones de derecho y el apercibimiento sobre los remedios judiciales disponibles. En cuanto a las determinaciones de hechos redactados por el DACo, entendemos que fueron probados tanto por el testimonio del recurrente y el expediente. Por lo tanto, no se cometió el tercer señalamiento de error.

**IV.**

Por todo lo anterior, se *confirma la Resolución recurrida* emitida por el Departamento de Asuntos del Consumidor.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones